Hennessy vs. Douglas County and another.

HENNESSY, Respondent, vs. DOUGLAS COUNTY and another, Appellants.

*January 11 — April 12, 1898.*

*Municipal corporations: Superior city charter: Assessments for street improvements: Notice: Constitutional law: Due process.*

1. Where a city charter requires assessments for street improvements to be made according to the benefits accruing to the several lots, a report of the board of public works of such city that they have assessed the lots benefited by such improvements according to benefits shows a compliance with the charter, although it may also show that the apportionment to lot owners was according to the number of front feet owned by them respectively, abutting on the street. An apportionment according to front feet is not necessarily erroneous. *Hayes v. Douglas Co.* 92 Wis. 429, distinguished.

2. That an assessment was ordered only on property fronting, abutting, and adjacent to a certain street for improvements thereon, does not, as a matter of law, unduly limit the district benefited, in the absence of proof that there was any outside of that limit which would be benefited.

3. The charter of the city of Superior does not require the published notice of the determination of the amount of assessments for street improvements to be made against lands benefited to have any particular address. It will be sufficient if addressed to all whom it may concern.

4. Proceedings for levying sewer assessments in accordance with provisions in the city charter requiring the publication of notices showing a plan of sewerage; the order of the council for the construction of the sewer when the contract therefor has been let; the opportunity given to the lot owner to pay the assessment or have bonds issued; and the placing of the assessment on the tax list, are not subject to objection as being a taking of property without due process of law.

5. Assessments for the building of sidewalks are valid if made in pursuance of the city charter, although that does not provide for the giving of any notice of the proceedings to lot owners except the annual entry in the tax rolls.

6. In respect to lots to be assessed for street improvements, the term "adjacent" means "lying near, close to, or contiguous, but not actually touching," while the term "adjoining" indicates that they are "so joined or united that no third body intervenes."

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed in part; reversed in part.*

The facts are stated in the opinion.

*H. H. Grace* and *H. C. Sloan*, for the appellants.

For the respondent there was a brief by *Knowles & Wilson*, and oral argument by *Geo. P. Knowles*.

PINNEY, J. The plaintiff, the owner of a large number of vacant and unimproved lots in the city of Superior, brought this action to set aside various tax certificates of sale belonging to the county of said lots for general taxes for different years, on the ground of illegality of the assessments for the years in which the taxes were imposed, whereby his property had, as he alleged, been subjected to an excessive burden. The action was also brought to set aside various special assessments for street improvements, sewers, and sidewalks, alleged to be illegal and void. The answer denied the allegations of the complaint specifically, and alleged that all such proceedings, taxes, and assessments were regular and valid. The defendants pleaded the several bars and statutes of limitations contained in the city charter, and the limitation of one year prescribed by sec. 1210*h*, S. & B. Ann. Stats. At the trial it appeared that the general assessments for the years 1892 and 1893 should be set aside, and, to avoid the necessity of reassessment for those years, certain computations and stipulated reductions were made, whereby certain sums were to be paid by the plaintiff as a condition of relief as to said general taxes and tax certificates, and all questions in relation thereto were thus eliminated from the case.

By the final judgment appealed from by the defendants the court set aside certain street-paving taxes, namely, the P street paving taxes, the West Fifth street paving taxes, the West Seventh street paving taxes, certain sewer taxes, and certain sidewalk taxes. The appellants assign for error

the decision of the court setting aside the said special taxes and assessments, insisting that they should have been sustained.

The court found, among other things, that all notices and orders required by the charter to be published or posted in relation to said proceedings, and set forth in the findings, were duly and regularly published, and all proceedings relating to said taxes and assessments, except as set forth in said findings, were and are legal, valid, and sufficient; and that no other evidence had been introduced or objections urged to set aside said special taxes or assessments, except as so shown and set forth.

The special assessments for improvements by paving streets involved are for such improvements on P street, West Fifth street, and West Seventh street. The points in relation to said assessments are substantially the same, and the plaintiff contended that they were all made in the same manner and had a common vice, namely, that in each case the whole amount of benefits assessed for the entire improvement had been divided by the number of feet fronting on the improvement, and that the benefit to each front foot so found, multiplied by the number of front feet on each parcel, produced the benefit which was assessed against such parcel, and that it nowhere appeared that the board which made the assessment had considered and passed upon all questions made material by the statute; that nothing was shown upon the face of the proceedings to indicate that the result at which the board of public works had arrived was other than that the assessments were according to the front-foot rule, and that they were therefore the same in substance as in the case of *Hayes v. Douglas Co.* 92 Wis. 429, and were void under that decision. These assessments were made under the charter of 1891, differing in its provisions from the charter of 1889, under which the decision in *Hayes v. Douglas Co.* was made.

Sec. 117 of the charter [Laws of 1891, ch. 124] provides that the opening, grading, paving, or improvement of any street "shall be chargeable to the lots or parcels of land benefited thereby, in proportion to the benefits secured thereto."

It is provided by sec. 119 that "before any established grade shall be changed or any work shall be ordered done on any streets, in whole or in part at the expense of the *abutting or adjacent* real estate, the board of public works shall view the premises and determine the damages and benefits which will accrue to each parcel of such real estate by such change or alteration of grade; the entire cost of the contemplated work or improvement on the street, the benefits and damages that will accrue to the several parcels of such real estate by such work or improvement, and *the amount that should be assessed* under the provisions of this chapter, to each parcel of such real estate to be benefited, *as benefits* accruing thereto by such contemplated work or improvements."

The board is required to make and file in their office a report showing their determination of the questions required to be considered by them under the provisions of said section; and it is provided by sec. 121, that notice shall be given by said board by publication in the official newspaper of the city, at least once in each week for two successive weeks, that such report is open for review at their office, and that on a day and hour named therein the board will be in session to hear all objections that might be made to said report; that no irregularity in the form of said report or of said notice should affect the validity of the same, if it fairly contained the information required to be conveyed thereby. At the times specified the board is required to hear all parties interested who might appear for that purpose, and to reduce to writing all objections that might be made, and all evidence that might be offered, to sustain the same, and is given

power to review, modify, and correct said report as they shall deem just, and thereupon a *complete and final report* shall be made and filed with the city clerk, together with all objections and evidence taken before them to sustain the same, with proof of publication of the said notice; and it is provided that no irregularity in the form of the report or manner of conducting the proceedings of the board should affect the legality of such report. The city clerk is required to file the same, and at the next meeting of the council thereafter to notify the council thereof, and the council may take such action on the same as it may deem advisable. If no action is taken by the council, the report should be deemed confirmed.

Sec. 123 provides that, subject to the limitations mentioned, the common council, through the board of public works, "may determine the amount to be paid by the real estate to be benefited *as benefits* on account of the improvement of the street, and the amount that shall be paid by the city at large."

Sec. 124 provides that when the report of the board of public works, as made by them, or as changed or modified, has been confirmed, the city clerk shall publish notice in the official newspaper of the city once in each week for two successive weeks that a final determination has been made as to the damages that will accrue to the real estate abutting on the street, in case of change in the establishment of the grade, or the benefits to be assessed to the real estate to be benefited in case of any proposed improvement; provided, that, in case the contract was let for less than the whole amount of the benefits assessed, the board of public works might reduce the same to the actual cost of the work.

By sec. 125 the owner of any parcel of land mentioned in such notice, feeling himself aggrieved by reason of the determination made, might appeal within twenty days thereafter to the circuit court, and provision was made for the trial and disposition of said appeal.

By sec. 126 it was provided that the appeal given by sec. 125 from the report of the board of public works, as confirmed by the common council, should be the only remedy of the owner of any parcel of land, or any person interested therein, affected by said improvement, for the redress of any grievance he might have by reason of making such improvement, or by reason of the change of any established grade covered by said report.

The preliminary report of the board of public works in the matter of the P street improvement was that, in compliance with the resolution passed by the common council, May 23, 1891, "ordering this board to view the property *fronting* and abutting to P street, between Bay street and West Seventh street," to determine the entire cost of paving said street between said points, and, further, to determine the *benefits and damages* accruing to, *and the amount that should be assessed* to, each lot or parcel of land *benefited* by reason of such improvement, on the 18th day of June, 1891, they did view the said property, and had determined the entire cost of said proposed improvement, and had further "determined the *damages and benefits* which will accrue to, and the *amount which should be assessed as benefits* to, each said lot, piece, or parcel of said real estate by reason of said proposed improvement;" that their determination upon all of said matters was fully set forth in the schedule thereto attached.

The final and corrected report was made July 9, 1891, reciting the reference to the board of public works; stating, also, that they had viewed the premises *fronting, abutting upon, and adjacent to P street* between the points named, and determined the entire cost of paving and otherwise improving the said street, and the *benefits and damages* accruing to, and the *amount* that should be assessed *as benefits* against, said.property benefited between said points by reason of said proposed improvements. It recited, also, that they had viewed the said premises on the 18th of June,

1891, and had on that day made their preliminary report as hereinbefore stated; that notice, proof of publication of which was thereto attached, was issued by said board, and published in the official newspaper of the city, advising all persons owning property between said points that said report was on file in the office of the board of public works, and would be open for review for a period of twenty days from the date of the notice; and that on the 9th day of July, 1891, from 10 o'clock to 11 o'clock a. m., the board would be in session to hear any and all objections that might be raised to said report or to anything therein contained; that at said time the board was in session one hour for said purpose, and, no objection having been raised to said report, the board thereupon, on said day, made its complete and final report on all of said matters, and filed the same with the city clerk; that the determination of the board upon all of said matters was therein set forth in the schedule thereto annexed and made a part thereof, which was accompanied with a plat showing the situation of the property, from which it appeared that all lots fronting on P street, except those in block 31, were assessed at a uniform sum of $425.48, and had a front on the street of 125 feet, so it would appear that the assessment was about $3.45 per front foot; that block 31 had 290 feet front, and was assessed for $1,355.03, or about $4.67 per front foot, as was contended by the plaintiff.

In respect to the paving of West Fifth street and West Seventh street, the proceedings, and preliminary and final reports, were *substantially the same* as in respect to P street, except that the plats and schedules tended to show that the proportion of the entire benefits assessed to each lot as benefits corresponded with the number of feet front of each lot fronting on the street, and was coincident with the area of the lots. In the improvement on P street the lots are 60x135, the length of the lots abutting on the side of the street, and

in assessing benefits the board apparently determined that one half of the block was benefited, and placed an assessment on three lots in the block as abutting on and adjacent to the street. On West Fifth street the lots were 20x135 and 60x135, the width or end abutting on the street, while the lots extended back to the center of the block. As to the West Seventh street paving, the location of the lots in respect to the street is substantially the same as in the West Fifth street assessment.

The effect of the statute thus stated is that the reports of the board of public works, preliminary and final, as confirmed by the council, determine the limits of the assessing or taxing district as to each improvement ordered, and in each instance it consists of the *abutting or adjacent* real estate benefited by the improvement, and within the limits of each such district the board of public works determined and reported the *benefits and damages* which would accrue to the several parcels of such real estate by such work or improvement, and the *amount* that should be assessed, under the provisions of the charter, to each parcel of such land abutting on or adjacent, to be benefited, *as benefits* accruing thereto by such contemplated work or improvement. The action of the board of public works, and of the common council in confirming the same, determined the extent of such assessment districts and the amounts to be charged or assessed *as benefits* against the lots benefited, and was conclusive, subject to alteration on appeal as specified in the charter; the action of the board of public works and common council in relation to said matters being of a *quasi* legislative character. *Teegarden v. Racine,* 56 Wis. 545. Not only the real estate *abutting* on the street, but *adjacent* real estate, may be included in such taxing district, and so assessed for the contemplated work and improvement. "Adjacent" signifies, in this connection, "lying near, close to, or contiguous, but not actually touching." The distinction be-

tween "adjacent" and "adjoining" seems to be that the
former implies that the two bodies are not widely separated,
though they may not actually touch, while "adjoining" in-
dicates that they are so joined or united that no third body
intervenes.   Anderson, Law Dict.; Elliott, Roads & S. 391;
*Massing v. Ames*, 37 Wis. 651, 652.   The word "adjoining,"
in its etymological sense, means touching or contiguous, as.
distinguished from lying near or adjacent.   *Holmes v. Car-
ley*, 31 N. Y. 289; *In re Ward*, 52 N. Y. 397.   There is noth-
ing in the statute that required the length of the lot frontage
on the street, in whole or in part, or the area of lots abut-
ting thereon or adjacent thereto, to be stated or included in
the report of the board of public works.

It was argued on behalf of the plaintiff that, because the
words "feet front" and "number of feet per lot" appear in
the tabulation and schedules annexed to the reports, the
benefits assessed were coincident with the area of the lots or
number of feet frontage, and hence that the assessment of
benefits was made, as in the case of *Hayes v. Douglas Co.* 92
Wis. 429, according to the front-foot rule, and that thereby
the positive statements in the certificates and reports of the
board of public works that the assessment was made ac-
cording to the *benefits* secured to each lot assessed were re-
butted and overcome, inasmuch as the entire assessment in
front of any lot or parcel, divided by the number of feet
frontage, produced a uniform sum, assumed to be the rate
of the assessment per front foot.   In the case of *Hayes v.
Douglas Co.* the assessment showed that the amount assessed
against each lot corresponded in like manner with the num-
ber of feet fronting on the street improved, but that case is
clearly distinguishable from the present.   The evidence of
the engineer there was that the general method of making
assessments was to take the whole number of feet frontage
on the street, and divide the cost by the number of feet, and
assess it at so much per foot; and this was sustained by the

testimony of other members of the board of public works. There is no such evidence in the present case, but the infer- ence is attempted to be drawn from the data stated that the assessments here in question were made according to the same erroneous rule. In that case the court found as a fact that "the amount to be assessed back as benefits per front foot *was found by dividing the entire cost* of the improve- ment by the number of feet frontage on both sides of that part of the street or avenue to be improved." The reports did not, as in the present case, certify or assert that the assessment was according to the *benefits* accruing to such lot or parcel of real estate by such improvement.

The validity of these assessments is to be determined from what appears upon the face of the proceedings, substantially as if on a demurrer thereto. No extrinsic evidence of in- validity is relied on. They must be held valid if upon their face the statutory power has been substantially complied with. In order to sustain the assessments, it must appear affirmatively that they have been made in substantial com- pliance with the authority given by the charter. *Hayes v. Douglas Co.* 92 Wis. 441, and cases cited. In that case it was said: "When it is required that the assessment shall be according to benefits accruing to each parcel, an assessment by the frontage rule does not show affirmatively a compli- ance with the statute. While such an assessment is not necessarily erroneous, it is presumed to be so unless the re- turn shows that the board has considered that matter, and finds that the benefits are in the proportion of the frontage of each parcel."

The reports under consideration appear to fully satisfy the requirements of the rule thus stated, for they show that the assessment is according to the *benefits* secured to each lot or parcel, and must therefore necessarily be correct. The positive statements therein contained cannot be avoided by mere arguments or ingenious inferences. We do not think

Hennessy vs. Douglas County and another.

that the final reports of these assessments show that they were made on the front-foot rule or according to the area, and the inference attempted to be drawn to that effect is not justified, we think, by the record. The reports show definite assessments for definite amounts upon certain specified lots for the amount of benefits accruing to such lots or parcels for such improvement. This averment is clear, direct, and certain, and there is nothing to furnish ground for any other inference. The language used shows that the amounts so assessed were apportioned upon and *according to benefits* accrued. It is enough, we think, that the return shows, by inclusive statement, that the action of the board was within the law. It was not necessary to go further, and show, by exclusive or negative averment, that no possible or probable cause of invalidity intervened, or that no other property was benefited by the improvement. The reports, preliminary and final, show that the board of public works did consider the matter of what property abutting on or adjacent to the streets in each case was or would be benefited by the improvement, and formed the taxing district accordingly, and as to each parcel or lot *the amount of such benefit.* This embraced the entire matter submitted to them, and, in the absence of evidence to the contrary, is conclusive that the assessments were upon the basis of benefits actually accruing, and not upon or by any rule or method that would produce any different result. In *O'Reilley v. Kingston,* 114 N. Y. 441, 448, where it appeared that the assessors " reached the conclusion that the tax should be apportioned among the owners of the real estate bordering upon the street, according to the number of feet front owned by each individual," the court said: " This is not necessarily an erroneous principle, if it was their judgment that each owner was benefited in that proportion. On the other hand, it may be the most just and equitable of any that could be adopted." *In re Cruger,* 84 N. Y. 619; *In re Eager,* 46 N. Y. 100.

In determining what lots or parcels of land abutting on or adjacent to the street were benefited, and the amount of such benefits in each instance, the board acted judicially, and upon actual view of the premises. Consequently their judgment on the question cannot be here reviewed, unless they acted upon an erroneous principle in making the assessment. It is enough if it is stated in their report or assessment that it was made upon the basis of benefits accruing as the law required, in which case it could not be wrong. The several assessments were for benefits accruing to each of the lots named in the report by reason of the improvement. The fact that in the report the board gave the frontage of the lots upon the street, or that they assessed upon each lot the exact cost of the improvement in front of the same, will not, of itself, vitiate the assessment. A report that the board had assessed the expense of the improvement according to the front foot, without finding that the special benefits were in that proportion, would not be in compliance with the law. Cooley, Taxation (1st ed.), 454. In *Springfield v. Sale*, 127 Ill. 360, 363, where the commissioners gave the frontage of the lots upon the street, and they assessed against each lot the exact cost of the improvement, it was held that that would not of itself vitiate the assessment, and the court said: "It would seem that the commissioners determined that the benefit to the lots was equal to the cost of the sewer in front of the same, and charged the amount thereof upon such lot. If so, it is impossible for us to say that the assessment was not fairly and impartially made for benefits accruing to said lots. What basis for ascertaining benefits shall be adopted by the commissioners is not prescribed by law." Nor does the charter in the present instance furnish any rule on the subject, other than that the assessment shall be according to the benefits accruing to the property. In *State v. Comm'rs of Streets & Sewers*, 38 N. J. Law, 195, it was held that an assessment for a street or

sewer, so apportioned on the lands that it happens to be co-incident with the proportion of area of those lands, may, like an assessment on frontage, be according to the rule of bene-fits as established by law, and, if commissioners, acting under that rule, so find and assess property,— that is, if they, in assessing property specifically benefited under the proper rule for such assessments, find that the area or frontage of the assessable property corresponds with the benefits to such property,— it would be a proper assessment and sustainable, in the absence of evidence to show an error in judgment; and that the mere fact that an assessment laid on property peculiarly benefited in proportion to benefits, and limited thereto, corresponds with area or frontage, will not overturn such assessment.

Objection is taken to the proceedings forming the taxing districts, that they were limited to a locality not contem-plated by the charter, in that the board of public works, as in the case of West Fifth street, where the board was or-dered to view the property *fronting, abutting, and adjacent* to said street between certain points, unduly limited the ex-tent of the district, in that the territory that might be ben-efited by the improvement might be greater and more ex-tensive than the property fronting, abutting, or adjacent to the street between the points named. The board reported that they had viewed all such property,— that is to say, all property fronting, abutting, or adjacent to the street between the points named,— and reported a description thereof and a statement of benefits. It cannot be affirmed, as a matter of law, that, outside of the limits indicated, there was any property that was or would be benefited by the proposed improvement. The report of the board of public works on the subject must be held to be conclusive. If any such prop-erty there was, it could have been pointed out before the board, after notice given and upon the hearing, before the final report was confirmed. The meaning of the word ad-

jacent, as already pointed out, shows that it is a relative, and by no means a definite and absolute, term. We think that, under the flexible provisions of the charter already noticed, no practical difficulty can occur in the administration of these provisions. The point does not appear to have any practical relation or bearing upon the assessments in question for want of proper facts whereon to found it.

Objection is taken to the notice given of the review of the preliminary report and confirmation thereof, in that it was directed "to all the owners of real estate fronting, abutting, and adjacent" to the street in question, and it is said that it should have been directed to the owners of property which was to be benefited. These were *prima facie* the parties to whom it is said the notice was directed. The charter (sec. 124) does not require it or any notice required in the proceeding to have any particular address or direction; it is required only that notice to the effect provided be published, etc. If addressed to all whom it might concern, it would be sufficient under the law. We are unable to perceive any substantial or valid objection to either of these assessments, and, for the reasons stated, we hold they should have been sustained, and that the circuit court erred in setting them aside.

### SEWER TAXES.

The plaintiff contends that the city charter of Superior conferred no authority on the common council to make any special assessments for sewer purposes, for the reason that the charter does not provide for giving the property owners who are to be taxed for the expense of constructing them any notice of the proceedings or any opportunity to appear for the purpose of being heard as to the amount to be charged against their property for such purposes; and the case of *Dietz v. Neenah,* 91 Wis. 422, is relied on. In that case it was held that the want of any provision for notice of the proceedings in making assessments for sewers ren-

dered the provisions of sec. 96 of the charter of the city of
Neenah on the subject of sewers unconstitutional and void.
An attempt was made, on the motion for rehearing in that
case, to support the assessment under secs. 895–904, R. S.
1878, inclusive, in relation to villages, made applicable to
cities by sec. 927, R. S. 1878, but it was held that the city,
for the reasons there stated, took, by virtue of said sections,
no power to make or levy assessments for sewer purposes.
Referring to the previous case of *Meggett v. Eau Claire*, 81
Wis. 326, the court expressed a disinclination to extend the
rule of that case as to what would constitute constructive
notice, and stated that the rule had been carried quite as
far in that case as it should be.   It seems to be conceded
that all the provisions of the city charter in relation to
sewer assessments had been complied with, and the only
question made concerning them is whether the provisions of
the charter on the subject of such assessment were uncon-
stitutional, under the ruling in *Dietz v. Neenah, supra.*

Prior to the levy of the sewer assessments, the city had
been duly divided into sewerage districts, and a plan of
sewerage had been adopted, as provided by sec. 147 of the
charter, and the board of public works had caused diagrams
thereof for each district to be prepared, as provided by sec.
148 of the charter, showing the sewers crossing the lots and
parcels of land involved in this action, and notices had been
given, as provided by sec. 149, by publication, and a hearing
had been had and reports made to the council, and examina-
tions made by them, as provided by sec. 150, and a final
determination made therein, as provided, and filed in the
city clerk's office, as specified in sec. 151.   The court found
that "all notices and orders required by the charter to be
published or posted," relating to the proceedings dividing the
city into sewerage districts, set forth in the findings, were
duly and legally published; and "all proceedings relating
to the taxes and assessments, except as contained and set

forth in the findings, were and are legal, valid, and sufficient, and no other evidence had been introduced to set aside said special taxes or assessments, except as set forth in the findings, and no objections have been urged against any of the proceedings relating to the special taxes or assessments, except as shown and contained in said findings."

The charter provisions bearing on the question (subch. VI, sec. 35, subd. 28) provide that the common council shall have authority by ordinance " to prescribe and regulate the location and construction of sewers for the city." It is provided by sec. 147 that the city should have full power to construct systems of sewerage, but should not enter upon such construction until it should have been divided into sewerage districts, and a plan should have been adopted in the manner specified in the charter, provided that it should not be necessary, before any part of the system was constructed, that the plan should be determined upon in all its details, but that it should be settled so far as relates to that portion of the system upon which the construction is commenced.

By sec. 148 the board of public works is required to cause diagrams of the plans of sewerage for each district to be prepared, showing the lots and parcels of land, the main sewers, minor sewers, manholes, catchbasins, and all other matters pertaining to the system. On the completion of such diagram, notice shall be given in the official paper of the city substantially as provided: "That a plan for a sewerage district, bounded as follows: ——, has been prepared and is now open for inspection at the office of the city clerk. All persons owning or interested in real estate in said district are entitled to examine the same at any time within twenty days after the first publication of this notice, and file objections to said plan. That on the —— day of —— this board will be in session to consider any objections that may have been filed, and all persons desiring to be heard

before the board can then be heard. Dated ——. Board of Public Works." The day for the hearing specified was required to be within ten days after the last publication of the notice, which is to be published at least once each week for two successive weeks. On the day specified the board was required to take up and consider all objections made to the plan as proposed, and to take down in writing any testimony that might be offered to sustain said objections; and, when it had concluded the hearing, they were to report the proposed plan, with all objections overruled, and the evidence taken thereon, to the common council. The council was then required to examine the same, and might approve the plan as proposed, or change it in such manner as they might think proper, and approve it as changed or modified by them, or might reject the plan, and direct the board to prepare a new one, in which case the same proceedings were required to be had as before.

By sec. 151 it is required that, when the plan of any sewerage district is finally determined, a complete diagram of the same is to be prepared and filed in the office of the city clerk. By sec. 152 the board is required to proceed "to construct the sewers determined upon, *when, and as ordered to do so* by the common council." After the common council shall have ordered the construction of any sewer, the board of public works is required to *advertise for and receive bids* for doing the work so ordered, having first procured to be carefully prepared and put on file in the office of the board, for the examination and guidance of bidders, plans and specifications describing the particular work to be done, the kinds and qualities of material to be used, and might let the contract to the lowest responsible and satisfactory bidder; provided, the board should have the right to reject any and all bids, and readvertise for proposals, if none of the bidders were satisfactory, or if they believed any agreement had been entered into between bidders to

prevent competition.   By sec. 153 it was provided that the
contract might, at the option of the city, except as other-
wise provided, require the contractor to receive, as payment
for so much of the work as had been assessed against the
lots benefited, interest-bearing certificates against such lots,
respectively, or improvement bonds, or the proceeds of such
bonds; and the residue of such contract, if any, should be
paid out of the proceeds of the general sewerage tax, to be
levied on real estate and personal property within the sew-
erage districts by the common council on the recommenda-
tion of the board of public works, or, after this is exhausted,
out of a portion of the proceeds arising from general city
sewer bonds.

It was also provided, by sec. 154, that, after any contract,
for work under said chapter, to be paid for in whole or in
part by such assessment, had been entered into, the board
of public works should make, or cause to be made, an assess-
ment in proportion to benefits *against all lots, parts of lots,
and parcels of land benefited* by the sewer so contracted to
be built, "at the *average rate* of $2.50 per lineal foot for its
*whole* length;" and by sec. 170, whenever a contract shall
have been let for the construction of any sewer, and the
amounts have been determined that are chargeable to the
lots or parcels of land benefited by said sewer, if the common
council deemed it for the best interests of the property own-
ers affected by the special assessment for the construction of
said sewer, they *might cause a notice* to be published in the
official paper of the city once in each week for two successive
weeks, substantially in the following form : " Notice is hereby
given that a contract has been let for the construction of a
sewer as follows: (describe the street or alley) that a state-
ment showing the amount of the special assessment charge-
able to the lots and parcels of real estate benefited by said
sewer is now on file with the city clerk;" and then notifies
the owner to pay or bonds will be issued.

Hennessy vs. Douglas County and another.

By sec. 173 it is provided that in each year after the issuing of said bonds until all of them are paid, when the tax roll for the year is prepared, sufficient of the special assessment on each parcel of land covered by said bonds to pay the annual instalment of principal, with six per cent. interest on the amount of the said special assessment then unpaid, " *shall be extended on the tax roll as a special tax* on said property, and thereafter this tax shall be treated in all respects *as any other city taxes,* and, when collected, the same shall be credited to the proper fund."

It is provided by sec. 35, subch. VI, of the charter, that the common council shall have full power and authority to make all rules, by-laws, and regulations for the carrying into effect the powers vested in such council as they shall deem expedient; and by sec. 59 of the charter it is made the duty of the board of public works, under the direction of the common council, to superintend all public works. Sec. 37 provides that all *laws, ordinances, regulations,* and by-laws shall be published, and sec. 29 requires the designation of a newspaper for publication of the same. It is provided by sec. 60 of the charter that the board of public works shall, at each regular meeting of the common council, make a brief and concise report of their doings up to the time of such meeting, and the council may take such action on the same as they may think proper. If no action is taken by the council within thirty days, the report *shall be deemed confirmed.*

It will be seen, therefore, that by the charter provisions are made for ample notice to property owners of the proceedings for sewer assessments. They are notified to appear and file objections to the plan prepared for the sewerage districts, showing the lots and parcels of land, etc. The board having reported the proposed plan to the council, that body then approves, modifies, or rejects the same. Its action thereon, and in ordering the construction of sewers, is published; plans and specifications for the work are then filed;

and the board of public works, by sec. 152, is required to advertise for bids to do the work; and, when the contract has been let, notice thereof is or may be published, as provided in sec. 170, giving the owner an opportunity to pay the assessment or have bonds issued on the property. The resolution for issuing the bonds is also published as a part of the proceedings of the council, and the assessment is placed on the tax roll and collected when and as the taxpayer is required to pay his general taxes. He is charged by law with notice of the fact of the time when his general taxes become due and payable. If the taxes thus assessed are returned as delinquent, there is a public notice of sale of the premises by the county treasurer, and, if sold for nonpayment of taxes, a notice of redemption from such sale is required to be published. If the land is occupied, notice of application for a tax deed is required to be given to the occupant.

Jurisdiction is undoubtedly essential before the plaintiff's property can be assessed, but it is obtained, for the purpose of such assessments, as soon as the plan of sewers is completed and filed, and districts are established, including the plaintiff's property, and notice given to him of that fact, as provided by the sections of the charter cited. Every person, whether a resident or nonresident, who owns land situated in this state, knows that it is subject to taxation and sale for the nonpayment of taxes annually assessed thereon, and is presumed to know the time prescribed by law for the sale thereof, and for its redemption for nonpayment. It seems that such notice as the law furnishes is in general the only notice given, and all the notice that is required; and if the legislature provides for notice to and hearing of the proprietor at some stage of the proceeding, as to what proportion of the tax shall be assessed on his land, it cannot be said that the levying of the tax or assessment is a taking of his property without due process of law. By sec. 107 of the

charter, the treasurer is required, on receipt of the tax roll,. to " give one week's notice thereof in the official paper," and such notice shall specify that " the taxes shall be paid before- the last Monday of January following; " and by sec. 105; power is denied to the common council to remit or cancel any tax, except in certain specified cases. Such assessments: are to be carried out on the tax roll in a separate column or- columns, opposite the lots or tracts upon which the same· may be a lien, and the treasurer has the same authority with reference thereto as if the amount of such lien was a general· tax.

The question recurs whether the provisions of the city charter referred to, and which were complied with in the- present case, constituted such constructive notice of the pro--· ceedings in question as to satisfy and comply with the rule stated in *Dietz v. Neenah,* 91 Wis. 422. We think the tax proceedings in question, as thus provided for, must be re- garded as due process of law, within the principles sanc- tioned by a decided preponderance of judicial authority, and maintained by the decisions of the supreme court of the United States, and as pointed out in *Meggett v. Eau Claire,* 81 Wis. 326. In this case the language of Mr. Justice TAYLOR, in *Warner v. Knox,* 50 Wis. 429, was quoted with approval, to the effect that " the manner of making street improve-- ments in cities, and of collecting the assessments necessary to pay for such improvements, and the property which shall. be charged with the cost thereof, is mainly a matter for the consideration of the legislature, and it would require a. very strong showing of injustice and wrong to justify this court in setting aside the action of the legislature upon a. subject of that nature."

The doctrine maintained and enforced by the supreme· court of the United States is, in substance, that the consti- tutional requirement of due process of law, as applied to assessments and taxation, is not infringed by a state law au--

thorizing the imposition of a tax or assessment upon prop-
erty according to its value, "if the owner has an opportunity
to question the validity of the amount of it, either before
that amount is determined or in subsequent proceedings for
its collection." *Hagar v. Reclamation Dist.* 111 U. S. 701.
Mr. Justice FIELD, in behalf of the court, on pages 708–710,
said: "But, where the taking of property is the enforce-
ment of a tax, the proceeding is necessarily less formal, and
whether notice to him is at all necessary may depend upon
the character of the tax, and the manner in which its amount
is determinable.   The necessity of revenue for the support
of the government does not admit of the delay attendant
upon proceedings in a court of justice, and they are not re-
quired for the enforcement of taxes or assessments. . . .
Of the different kinds of taxes which the state may impose,
there is a vast number of which, from their nature, no no-
tice can be given to the taxpayer, nor would notice be of
any possible advantage to him, such as poll taxes, license
taxes, . . . and, generally, specific taxes on things, or
persons, or occupations. In such cases, the legislature, in
authorizing the tax, fixes its amount, and that is the end of
the matter. If the tax be not paid, the property of the de-
linquent may be sold, and he be thus deprived of his prop-
erty. Yet there can be no question that the proceeding is
due process of law, as there is no inquiry into the weight of
evidence or other element of a judicial nature, and nothing
could be changed by hearing the taxpayer. No right of his
is therefore invaded. . . . So, also, if taxes are imposed
in the shape of licenses for privileges, such as those on for-
eign corporations for doing business in the state, or on do-
mestic corporations for franchises, if the parties desire the
privilege they have only to pay the amount required. In
such cases there is no necessity for notice or hearing."

In *Spencer v. Merchant*, 125 U. S. 345, it was held, in sub-
stance, that where the statute of a state, under which a

street assessment is made, "provides for notice to and hearing of each owner at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law," within the meaning of the constitution. To the same effect are *Kentucky Railroad Tax Cases*, 115 U. S. 331, where it was said: "It has, however, been repeatedly decided by this court that the proceedings to raise the public revenue by levying and collecting taxes are not necessarily judicial; and that 'due process of law,' as applied to that subject, does not imply or require the right to such notice and hearing as are considered to be essential to the validity of the proceedings and judgments of judicial tribunals. Notice by *statute* is generally the only notice given, and that has been held sufficient. 'In judging what is "due process of law,"' said Mr. Justice BRADLEY in *Davidson v. New Orleans*, 96 U. S. 97, 107, 'respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law;" but, if found to be arbitrary, oppressive, and unjust, it may be declared to be not "due process of law."' In its application to proceedings for the levy and collection of taxes, it was said in *McMillen v. Anderson*, 95 U. S. 37, 42, that it 'is not, and never has been, considered necessary to the validity of a tax' 'that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed.' . . . But in *State Railroad Tax Cases*, 92 U. S. 575, where the assessment of the taxable value of railroads by a board was challenged for the reason that the proceeding was not 'due process of law' for want of notice and hearing, it was said by Mr. Justice MILLER, delivering the opinion of the court: 'This board has its time of sitting fixed by law. Its

sessions are not secret.   No obstruction exists to the appear-
ance of any one before it to assert a right or redress a wrong;
and *in the business of assessing taxes, this is all that can be
reasonably asked.'* "

These remarks are particularly pertinent to the proceed-
ings of the board of public works, and of the common coun-
cil, in making the assessments in question.   In *Davidson v.
New Orleans*, 96 U. S. 97, it was held that due process of
law does not in all cases require resort to a court of justice
to assert the rights of the public against the individual, or
to impose burdens upon his property for the public use.   In
*Paulsen v. Portland*, 149 U. S. 30–37, where the question was
the one of notice to the taxpayer, the court said: " While
not questioning that notice to the taxpayer in some form
must be given before an assessment for the construction of
a sewer can be sustained, as in any other demand upon an
individual for a portion of his property, we do not think it
essential to the validity of a section in the charter of a city
granting power to construct sewers that there should *in
terms be expressed either the necessity for, or the time or man-
ner of, notice*.   The city is a miniature state; the council is
its legislature; the charter is its constitution; and it is
enough if, in that, the power is granted in general terms,
for, when granted, it must necessarily be exercised subject
to all limitations imposed by constitutional provisions, and
the power to prescribe the mode of its exercise is, except as
restricted, subject to the legislative discretion of the coun-
cil.   Thus, in the case of *Gilmore v. Hentig*, 33 Kan. 156, it
was held that: ' Where a statute authorizes a city to pro-
vide for the construction of sewers and drains, and to tax
the costs thereof upon the adjacent property owners, . . .
such failure to require notice does not render the statute
unconstitutional or void, but notice must nevertheless be
given, and the city would have a broad discretion with
reference to the kind of notice and the manner of giving

the same.'"    *Cleveland v. Tripp*, 13 R. I. 50; *Allen v.*
*Charlestown*, 111 Mass. 123.    And notice by publication is
a sufficient notice in proceedings of this nature.    *Lent v.*
*Tillson*, 140 U. S. 316–328.

It is beyond dispute that the sewer districts were lawfully
created, and diagrams adopted after notice to all parties
interested, and that a complete diagram was prepared and
filed in the office of the city clerk.    The common council
ordered the construction of these sewers, and advertised and
received bids for doing the work so ordered; and, after having
put on file in the office of the board of public works
plans and specifications for the same, said board made, or
caused to be made, the assessments in question; and that
this board might, in its discretion, give the notice required by
sec. 170.    It had the power to give it.    In *Davidson v. New*
*Orleans*, 96 U. S. 97, it was said: "Whenever, by the laws
of a state, or by state authority, a tax, assessment, servitude,.
or other burden is imposed upon property for the public use,
whether it be of the whole state or of some more limited
portion of the community, and those laws provide for a
mode of confirming or contesting the charge thus imposed,
in the ordinary courts of justice, with notice to the person,
or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property
without due process of law, however obnoxious it may be to
other objections."    And in *Spencer v. Merchant,* 125 U. S. 345,
it was held: "The legislature, in the exercise of its power
of taxation, has the right to direct the whole or a part of
the expense of a public improvement, such as the laying out,.
grading, or repairing of a street, to be assessed upon the
owners of land benefited thereby, and the determination of
the territorial district which should be taxed for a local improvement is within the province of legislative discretion.
If the legislature provides for notice to and hearing of each

proprietor at *some* stage of the proceedings, upon the ques-
tion what proportion of the tax shall be assessed upon his
land, there is no taking of his property without due process
of law." *McMillen v. Anderson,* 95 U. S. 37.

The several official acts and proceedings authorized by the
charter, when taken together, must, we think, be regarded
as providing for due process of law in the present case within
the principles sanctioned by the decisions referred to, and,
as held in *Meggett v. Eau Claire,* 81 Wis. 334: "As against
the plaintiff, who is here invoking equitable relief, the city
officers must be presumed to have performed their respect-
ive duties except in so far as the contrary has been alleged
or shown." The finding of the court sufficiently shows that
they have properly executed their authority. There is no
specific objection made to the contrary, and we hold, there-
fore, that, by compliance with the provisions of the charter
above referred to, such constructive notice was given as to
render valid the sewer assessment proceedings in question.

### Sidewalk Taxes.

The judgment of the circuit court set aside a sidewalk tax
for $131.11. The finding upon this subject is that the only
proceeding taken by the city of Superior for the building
of said sidewalks was a notice to the contractors for bids
for doing the work; that no notice was ever given to the
plaintiff requiring him to do the work of constructing the
walk, and no notice whatever was ever given to him that
his property was liable to bear the expense of the sidewalks
until after the same were constructed and the amount of the
cost thereof extended on the tax roll.

Subch. XIV of the city charter makes provision for side-
walks in substance that they shall be laid to the established
grade of the street; that the common council may, by resolu-
tion, establish the width, determine the material, and prescribe
the method of construction of sidewalks. The charter (sec.

145) provides that the construction of sidewalks shall be done at the expense of the owners of the lots or lands benefited, as therein provided; that it shall be the duty of the board of public works to cause a standard sidewalk to be laid in front of such lots or parcels of land. Such ·work is to be let by contract in all cases where the estimated cost shall exceed $100, and in all other cases it may be done without the intervention of any contract; and, in all cases where the sidewalk shall be out of repair for more than three days, it shall be the duty of the board of public works to repair the same. The board of public works is to keep an account of the expenses of laying and repairing sidewalks, whether the work be done by contract or without the intervention of a contract, and report the same to the city comptroller, who shall annually prepare a statement of the expenses so incurred chargeable to each lot or parcel of land benefited, and report the same to the city clerk, and the amounts therein charged shall be by the city clerk entered in the tax roll as a special tax against said lot, subdivision, or parcel of land, and the same shall be collected in all respects like other city taxes upon real estate.

No other notice of the assessments for sidewalks than is there provided seems to be either necessary or beneficial. *Hagar v. Reclamation Dist.* 111 U. S. 708–711. There can be no sale of the property of a citizen until he has had ample time to make application for all appropriate remedy; nor, if sold, can it be conveyed until after a very considerable period within which it may be redeemed. Taxpayers cannot ignore the regular recurring annual periods of taxation and the operations of our taxing system. While property has its rights, it owes important duties as well, and which the owner should not be allowed to ignore.

The plaintiff appeals to a court of equity without any allegation of want of knowledge, notice, or information in regard to these proceedings against his property to subject

it to its just and proper public burdens; and, while the improvements have doubtless greatly benefited his property, he seeks to set aside the assessments made to pay for them, and cast the loss that will then ensue upon those who have contributed of their labor and means to make them and improve his estate. Public policy requires that the rule granting relief in equity in such cases be held with some degree of strictness. The considerations to which we have adverted suggest that the rule in *Meggett v. Eau Claire*, 81 Wis. 334, as to what should be regarded as constructive notice in cases like the present, should be adhered to instead of being restricted.

It follows from these views that the parts of said judgment relating to the tax certificates issued upon the tax sales of 1893 and 1894 by the county treasurer of *Douglas* county, as well as the deductions directed to be made therefrom, be affirmed; and that the parts of the said judgment setting aside the paving, the sewer, and the sidewalk taxes mentioned therein be reversed, with costs of this appeal; and that this cause be remanded to the circuit court, with directions to enter judgment in relation to the said paving, sewer, and sidewalk taxes, in accordance with the opinion of this court.

*By the Court.*— Judgment is ordered accordingly.