PETERSON, Appellant, vs. CITY OF PHILLIPS, Respondent.

*January 15—February 9, 1926.*

*Municipal corporations: Assessment for laying water mains: Limitation: Hearing before board of public works: Right to call members and city officials as witnesses: Uniform assessments.*

1. Plaintiff, who entered objections to an assessment for the laying of water mains in front of his property, is entitled to know how the assessment was made, and his request before the board of public works and later before the common council that members of the board of public works and other city officials be sworn should have been granted, as the fact that the parties called had taken part in the making of the assessment did not render them immune from giving testimony. pp. 247, 248.

[2. Whether the error in refusing the proposed witnesses to be sworn and testify is so prejudicial as to require reversal, not decided.]  p. 248.

3. The assessment was not objectionable as arbitrary because abutting lots were uniformly assessed at $1.50 per front foot where there·was testimony that the board of public works viewed the premises and that they had used their judgment in arriving at the amount.  p. 248.

4. Under sec. 925n—101 of the Statutes of 1889, as it stood prior to the revision of 1921, and as now construed, an abutting owner cannot be legally assessed for the laying of water mains more than one half the cost of laying a six-inch pipe in front of his lots.  p. 251.

APPEAL from a judgment of the circuit court for Price county: G. N. RISJORD, Circuit Judge. *Reversed.*

Appeal from a judgment sustaining a special assessment against plaintiff's property for the laying of water mains in the defendant city. It appears from the evidence that a part of the city of *Phillips* had previously been served by water mains and that an addition to such mains was made calling for over three miles of new water-main construction, including a large number of hydrants and the crossing of approximately forty-seven street and alley intersections. The plaintiff was the owner of three regular lots each having sixty feet of frontage on the proposed new water main,

and the special assessment against each lot amounted to $90, or $1.50 per front foot. The assessment was arrived at in this manner: The total cost of laying the main from the water tank to the properties in question was added up. To such cost were added the following items: Legal, engineering, printing, interest, etc., $5,505.31. The total cost so arrived at, including the cost of the street and alley intersections and hydrants, less a certain reduction for a cheaper pipe, was assessed against the property of abutting owners, making the total cost and assessment per front foot $1.50. The plaintiff claimed that the amount of tax properly assessable against his property could not exceed one half of the cost of laying a six-inch pipe along the front of his lots as provided for in sub. (2), sec. 62.19, Stats. 1923, and from a judgment sustaining the assessment he appealed.

*W. K. Parkinson* of Phillips, for the appellant.

*H. J. Blanchard* of Phillips, for the respondent.

VINJE, C. J. The plaintiff entered objections to the assessment before the board of public works and also before the city council and offered to swear witnesses before both bodies. Before the board of public works he requested separately that each member be sworn and be required to testify. The requests were refused. He also requested separately that the city engineer, the city clerk, and the mayor be sworn and required to testify. They were all present at the meeting. The requests were refused. At the hearing before the common council requests were separately made to have a member of the board of public works, several members of the council, and the city engineer, who were all present, sworn and give testimony. The requests were refused on the ground that the taking of testimony of parties who had taken part in the making of the assessment was not authorized by law because they acted in a *quasi*-judicial capacity.

The rulings were clearly erroneous. *Eau Claire v. Eau Claire W. Co.* 137 Wis. 517, 119 N. W. 555; *Appleton W. W. Co. v. Railroad Comm.* 154 Wis. 121, 143, 144, 142 N. W. 476. Plaintiff was entitled to know how the assessment was made and he had a right to call those who knew the most about it to inform him. He was entitled to introduce evidence, and he could exercise his discretion as to who he would call. The fact that the proposed witnesses had taken some part in making the assessment, or might take some further part in perfecting it according to statute, did not render them immune from giving such testimony concerning it as the plaintiff might require and they could furnish. Presumably the parties called were the best qualified to testify how the assessment was arrived at.

Since we must reverse the case on another ground, we purposely refrain from deciding whether or not the error of refusing the proposed witnesses to be sworn and testify is so prejudicial that it alone ought to call for a reversal. Moreover, plaintiff had the benefit of examining these witnesses in the circuit court.

Complaint is made because the abutting lots were uniformly assessed $1.50 per front foot as benefits. It is claimed that this shows an arbitrary front-foot rule. We do not think such an inference necessarily follows. A member of the board of public works who testified in court said that while the results as to benefits were uniform, yet they used their judgment in arriving at the amount; that the whole board viewed the premises at one time, and two of them a second time. Such an assessment is valid under the rule of *Hennessy v. Douglas Co.* 99 Wis. 129, 74 N. W. 983, and subsequent cases. It is difficult to see how a difference in the assessment of benefits resulting from the laying of water mains could be justified as to lots similarly situated with reference to the improvement. The natural presumption is that they are all equally benefited per front foot. And if the judgment of the members of the board of

public works who view the premises reaches a uniform result under such circumstances the call of the statute is met.

The remaining question in the case is whether the board could lawfully assess the cost of the total length of the main, including street and alley intersections and the extra for engineering, attorney's fees, etc., as it did against the abutting lots, or whether it was limited to one half the cost of laying a six-inch pipe along the front of such lots, as contended for by plaintiff.

Our first general statute with reference to an assessment for the laying of water mains is found in sec. 925n—101 of the Statutes of 1889. It provided:

"A regular lot (not corner) which may front or abut on the line of water pipe shall be assessed an amount equal to one half of the cost, as estimated by the said board of public works, of furnishing and laying a regular minor water pipe of approved materials and manufacture with the required openings for connections with private service water pipes along the front of said lot. Such minor pipe to be not less than four nor more than six inches in diameter, as the said board may determine."

This statute was substantially copied from the Milwaukee charter which was adopted in 1874. Sec. 16 of ch. X of said charter, being ch. 184 of the Laws of 1874, provides as follows:

"A regular lot (not corner) which may front or abut on the line of water pipe, shall be assessed an amount equal to one half of the cost, as estimated by the said board of public works, of furnishing and laying a regular minor water pipe of approved materials and manufacture, with the required openings for connections with private service water pipe along the front of such lot; such minor pipe to be not less than four nor more than six inches in diameter, as the said board may determine."

In *Harrison v. Milwaukee*, 49 Wis. 247, 5 N. W. 326, the Milwaukee charter was construed and the court there said: "There can be no doubt that the plaintiff's lots could

not legally be assessed for more than one half of the cost, as estimated by the board of public works, of furnishing and laying the regular minor water pipe in front of her lots." This construction applies equally to the provisions of the general statute of 1889. In 1921 the revisor of the statutes presented a bill for adoption by the legislature. This bill was adopted as presented to the legislature without amendment as to this matter and provided as follows:

"(1) *Assessments*. When the council shall have ordered the laying of any water pipe or heat main or lateral forming part of a plant owned by the city, the board of public works shall, before laying the same, make an assessment upon the property benefited as provided in this section.

"(2) *Water mains*. The board shall assess against the several lots, parts of lots or parcels of land which front upon the proposed line of any water main, or which may be contiguous to and used in connection with any such lot or parcel of land, such sum as the board shall determine such lot or parcel of land will be specially benefited thereby, not exceeding one half of the cost of furnishing and laying a water main of not more than six inches."

On page 124 of the said bill, the same being 21 Senate, 1921, the revisor inserted the following note:

"The assessment for water mains and heat mains are separated for the reason that the statute, sec. 925—101, now makes the basis for assessment a pipe not less than four nor more than six inches in diameter which is applicable only to water mains. The assessment for water mains is based on benefits limited to one half the cost of a main not to exceed six inches in diameter. The amount of assessment for heat mains is based on benefits limited by the total cost of laying the mains."

It will be noted that there is some change in the phraseology of the old statute, and especially in the leaving out of the words, after the words "water pipe," "along the front of said lots." But it is evident that the revisor by the omission of such words did not intend to change the method of

assessment, and it is quite evident that the legislature considered that no change was intended. It is the practice of the revisor, when a change is proposed in the law, to call the attention of the legislature to the fact so that it may be aware of the proposed change. Here no change was suggested, and it is plain from the revisor's notes that he was under the impression that the law was left intact. It is quite evident also that a change in the mode of assessment such as contended for by the city of *Phillips* would not have been passed by the legislature without some discussion.

Under the law as it stood before the revision and as now construed the cost was plainly limited to one half the cost of laying a six-inch pipe with the usual openings for service pipes, if any, along the front of the lot. If the method claimed by the city of *Phillips* was intended, it is evident that as in the present case an assessment of more than twice that amount could be made. Such a change, it is fair to assume, the legislature did not intend to make without amendment or discussion.

It is quite obvious that the revisor sought to condense and clarify the wording of the old statute but not to make any change therein. Such being the case, the assessment was limited to one half the cost of laying a six-inch pipe along the front of plaintiff's lots. This cost, the evidence shows, was seventy-two cents. Whether this included the required openings for service pipes does not clearly appear. The cost of such openings, if any, should be added to the cost of the pipe. No farther costs for hydrants, street or alley intersections, or for engineering, attorney's fees, or interest, or other overhead, is permitted to be charged under the terms of the statute.

*By the Court.*—Judgment reversed, and cause remanded with directions to set aside the assessment and order a reassessment according to law.