Swain *v.* Fulmer *et al.*

———————◆———————

17,017.

SWAIN *v.* FULMER ET AL.

MUNICIPAL CORPORATION.—*Statute Construed.—Construction of Sewer. —Notice.—Due Process of Law.— Constitutional Law.*—The act of 1893 relating to the construction of sewers, the giving of notice of the work to be done, describing in such notice the boundary lines of the district or area intended to be drained and to be assessed for the costs of the same, and fixing a day on which remonstrances will be heard, is constitutional, the notice required by the statute being ample to the property-holders of the district, and ample opportunity being given to the property-owners to be heard.

From the Marion Circuit Court.

*C. M. Cooper,* for appellant.

*A. C. Harris, B. K. Elliott* and *W. F. Elliott,* for appellees.

COFFEY, J.—Section 8, Acts of 1893, p. 61, an act concerning cities, provides, among other things, that whenever the board of public works shall order the construction of any local sewer or drain, it shall cause the necessary drawings and specifications for such work to be pre-

pared and filed in such office, and shall cause a notice of the adoption of the resolution ordering the work to be done to be published in some daily newspaper of general circulation in such city, once a week, for two weeks. Such notice shall name a date after the last day of publication, at which such board will receive and hear remonstrances from persons interested in or affected thereby.

On the date set the board shall consider such remonstrances, if any, and thereupon take final action, confirming, modifying or rescinding their original resolution. Such action shall be final and conclusive on all persons. If such original resolution be confirmed or modified, the board is required to cause a notice to be published in such city once a week, for two weeks, informing the public and contractors of the general nature of the work, and of the fact that the drawings and specifications are on file in the office of the board, and calling for sealed proposals for such work by a day not earlier than ten days after the first of said publications.

Whenever such sewer or drain shall, from its size and character, be intended and adopted, not only for use by the owners of abutting property along the line of such sewer or drain, but is also intended and adapted to receive sewage from collateral drains already constructed, or which may be constructed in the future, then the board of public works shall prepare a map, which will give thereon the exact course of said proposed sewer, and its appurtenances, and which will clearly show, by boundary lines, the total area or district to be drained and to be assessed for the construction of said sewer; it shall prepare all necessary profiles, drawings, and specifications for such work, which map, profile, drawing, and specifications shall be placed on file in the office of said board; it shall also publish a notice of the adoption of

the resolution ordering the work to be done, and shall describe in such resolution and in such notice the boundary lines of the district or area intended to be drained by such sewer and to be assessed for the cost of the same, and such publication of the adoption of said resolution shall constitute a legal notice to all owners or holders of property, or persons having valuable interests therein, within the bounds of the district or area described, that such property in said district or area will be assessed for the construction of such sewer. The publication is required to be made in some daily newspaper published in the city, once each week, for two weeks, and shall name a date after the last day of publication, at which the board will receive or hear remonstrances from persons interested in, or affected by, the construction of the sewer. On the date set, the board is required to consider the remonstrances, if any are presented, and take final action confirming, modifying, or rescinding its original resolution. Such action is made final and conclusive on all property holders in the district intended to be drained and assessed.

Section 10, of the same act, provides that whenever, in the opinion of such board, any sewer or drain ordered to be constructed, or any enlargement of one already constructed, shall, from its size and character, be intended and adapted, not only for use by abutting property holders along the line of such drain or sewer, but is also intended and adapted for receiving sewerage from collateral drains already constructed, or which may be constructed in the future, then, and in that case, such board shall make a division of the cost of such work. So much of said cost as shall be equivalent to the construction of an adequate local sewer, not adapted to receive sewage from collateral drains or sewers, shall be paid for exclusively by the abutting property holders in the

same manner and to the same extent as local sewers are paid for by them. The excess of cost, over and above what would be equivalent to the cost of a local sewer, shall be assessed against each piece of property in the district or area to be drained, in the proportion its area bears to the total area of the district, including abutting property holders, as well as the holders not situated on the line of such drain or sewer.

Acting, under these statutory provisions, the board of public works, of the city of Indianapolis, on the 1st day of March, 1893, passed a resolution having in view the construction of a large sewer designed to carry an unusual quantity of water, and to drain, by collateral drains or sewers, a large area in the city, consisting of property not abutting upon the line of the proposed sewer. All the notices provided for by the statute were given and such proceedings were had as resulted in a contract with the appellees for the performance of the work. The appellees being engaged in the construction of the sewer, the appellant, who owns property liable to be assessed to pay for the work, but not abutting on the line of the sewer, seeks to enjoin them from the performance of further work, upon the alleged ground that the statute above referred to violates the constitution of the State, and is for that reason void. To his complaint for an injunction, the circuit court sustained a demurrer, from which decision he appeals to this court.

His contention is that the statute is unconstitutional for the reasons:

*First.* That the notice provided for by the statute is insufficient and incomplete, and is equivalent to an entire absence of notice.

*Second.* That the mode prescribed for assessing the benefits is arbitrary, unequal, and unjust, having no reference to the cash value of the property to be assessed.

It is well settled that a statute which provides for the imposition of a burden upon the property of the citizen, without notice to him and without an opportunity to be heard, is invalid.   To warrant the imposition of such a burden, notice and an opportunity to be heard must be provided for either by the statute authorizing such burden, or by some other statute.   But the kind of notice and the manner of giving it are matters of purely legislative discretion and control.

*In re, etc., Village of Middletown,* 82 N. Y. 196; *Tidewater Co.* v. *Coster,* 18 N. J. Eq. 518; 2 Dillon's Munic. Corp., section 802a; Mills on Eminent Domain, section 98.

Where a statute provides for constructive notice, as by publication, such notice is sufficient.   Elliott on Roads and Streets, 152; 2 Dillon's Munic. Corp., section 804; *Scott* v. *Brackett,* 89 Ind. 413; *Parr* v. *State, for Use,* 103 Ind. 548.

The contention of the appellant, to the effect that each property-holder to be assessed must be named in the notice, can not be sustained.   It would be difficult, if not impossible for the board of public works, in a large territory to be drained, covered by a populous city, to ascertain the names of all persons owning or having an interest in the property to be assessed.   The requirement contended for by the appellant has never, to our knowledge, been deemed necessary.

The notice provided for by this statute and the opportunity to property holders to be heard seem to us to be ample and wholly unobjectionable.

It seems to be an admitted fact that no system of assessments for local improvements can be devised which will be absolutely perfect, and which will, in all cases, secure perfect equality and exact justice.   The most that can be expected is that a system, when devised, shall approxi-

Swain *v.* Fulmer *et al.*

mate, as nearly as may be under the circumstances, to equality, proportionate to the benefits received among those to be assessed.

The assumption, by the appellant, that the statute under immediate consideration creates a system which is arbitrary, unequal, and unjust because the property is not assessed in proportion to its cash value is, we think, erroneous. If all the property within a given area stands in equal need of drainage, the benefits received by each parcel of equal area will generally be equal. It is true that some property, of less value than other property in the same district, may receive greater benefit because its small value may arise from the difficulty of draining it, while the other property may be more valuable because it does not need drainage. But where all the property within a given district stands in equal need of drainage, we can conceive of no more equitable mode of assessing the benefits derived from such drainage than to assess it according to the area possessed by each owner. Such a mode of assessment has often been sustained by the courts.

Upon this subject Judge DILLON says: "Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting property, or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is according to the present weight of authority, considered to be a question of legislative expediency, unless there is some special restraining constitutional provision upon the subject." 2 Dillon's Munic. Corp., sections 752 and 761.

In the case of *Johnson* v. *Duer*, 21 S. W. Rep. 800, an assessment according to area, and without regard to

value, to pay the benefits derived from the construction of a sewer, was sustained. This system of assessment was also sustained in the following cases: *City of St. Joseph* v. *Farrell*, 17 S. W. Rep. 497; *Wallace* v. *Shelton*, 14 La. Ann. 498; *McGehee* v. *Mathis*, 21 Ark. 40; *Daily* v. *Swope, Guar.*, 47 Miss. 367; *City of St. Louis* v. *Oeters*, 36 Mo. 456.

The case of *Thomas* v. *Gain*, 35 Mich. 155, seems not to be in line with the weight of authority upon this subject, but even that case does not hold that the benefits derived from the construction of a sewer may not be assessed according to the area of the lots owned by those benefited. In the course of the opinion in that case, the learned judge who wrote it says: "In what has here been said, it is not intended to decide, or to intimate, that a sewer tax may not, under some circumstances, be lawful though apportioned by the area of the lots assessed."

The statute under consideration in this case differs widely from the statute considered in the case of *Thomas* v. *Gain, supra*.

In our opinion, the statute under consideration is not subject to the constitutional objections urged against it, and that it is a valid legislative enactment. It follows from this conclusion that the circuit court did not err in sustaining the demurrer of the appellees to the appellant's complaint in this case.

Judgment affirmed.

Filed June 16, 1893.