CHARLES SHIMMONS ET AL. v. THE CITY OF SAGINAW AND GEORGE HOUSNER, COUNTY TREASURER.

*Municipal corporations—Public improvements—Repaving streets— Necessity—Assessment of benefits—Regularity.*

1. Where, as in this State, the power exists to repave a street once improved, the question of necessity must be determined by the body in whom such power is vested, and is not open to review or attack collaterally, except in a clear case of fraud.

2. While it is true that a street to which every one has access, and which every person is as free to use as the abutting land-owners, must be maintained at public, and not at private, expense, except only to the extent that its improvement plainly and palpably benefits the property assessed in excess of the general benefit that all property derives from the improve-ment, the determination of the question of the benefit to be derived is vested in the municipal authorities, which deter-

---

mination is final, in the absence of fraud; citing *Davies v. City of Saginaw*, 87 Mich. 439.

3. It is within the authority of a city council, on paving a graveled street, to use the gravel on other streets; citing *Griswold v. Bay City*, 35 Mich. 452.

4. After the institution of proceedings to pave a street under a charter empowering the city council to fix the assessment district, the charter was so amended as to vest said power in the board of public works. Two days after the amendment had taken effect, the council, in ignorance of the change in the charter, adopted a resolution fixing the assessment district. On learning of the amendment, the council, by resolution, referred the assessment district as fixed to the board of public works, and that body approved the same, but specifically negatived, in a certificate attached to the roll prepared by the city engineer, any claim that the board considered itself bound to limit the assessment for benefits to the district fixed by the council. And it is held that the assessment made by the board was valid, though the limits of the district were the same as those fixed by the council.

5. The court will not presume, in a suit to set aside an assessment made by the proper officers for the expense of a public improvement, nor, indeed will it entertain the belief, in the absence of clear proof, that there has been an intentional violation by said officers of their oaths of office.

6. Under a provision of a city charter that all of the proceedings of the common council in the matter of the making of public improvements shall be matters of record in its proceedings, and shall not fail on account of any technical or clerical error made by any officer of the city, nor because of any act not being done at the time or in the manner required, unless the party complaining of such failure shall show affirmatively that he has been injured thereby, a failure to have before the council, at the time of its confirmation of the assessment roll, proof of the publication of notice of the hearing of objections to said roll, will not operate to defeat the assessment, where the proof shows that such notice was in fact given.

Appeal from Saginaw. (Wilber, J.) Submitted on briefs February 1, 1895. Decided April 2, 1895.

Bill to declare a paving assessment to be null and void, and to remove the cloud created thereby upon the title to complainants' lands. Defendants appeal. Decree reversed,

and bill dismissed.    The facts are stated in the opinion.

*Trask & Smith*, for complainants.

*William G. Gage*, for defendants.

MONTGOMERY, J.    This is a bill filed by 36 owners of real estate abutting on Gratiot street, in the city of Saginaw, to remove an alleged cloud upon the title of their lands, growing out of an assessment of the same for the repaving of Gratiot street.    A large number of objections were made to the proceedings levying the assessment.

It appeared that the street in question had been previously graded and graveled, and that the property in question had been assessed for a portion of this expense. While it is conceded by complainants' counsel, on the authority of *Williams v. Detroit*, 2 Mich. 560, and *Wilkins v. Detroit*, 46 Id. 120, that the council may order a repavement of a street once paved, or the pavement of a street previously improved by graveling, yet it is insisted that when a street has once been improved at the expense of the adjoining land-owners, and is in a reasonably fair and good condition for use as a street, it cannot be torn up without the consent of the tax-payers, and the material used to improve other streets.    We think, however, that if the power exists, as it unquestionably does in this State, to repave a street once improved, the question of necessity must be determined by the body in whom that power is vested, and is not open to review or attack collaterally, except in clear case of fraud.    Counsel concede that they have discovered no authority in point, nor have we, in our research, been able to find any going beyond the doctrine here announced.

It is further said that a highway to which every one has access, and which every person is as free to use as the

104 MICH.—33.

person owning the land bordering upon it, must be maintained at public expense, not at private, except only to the extent that such improvement plainly and palpably benefits the property assessed in excess of the general benefit that all property derives from the improvement.   While this is true, the determination of the question of the benefit to be derived is vested in the municipal authorities, and when this determination is made it is final, in the absence of fraud.   *Davies v. City of Saginaw,* 87 Mich. 439; Cooley, Tax'n (2d ed.), 656.

Complaint is also made that the city authorities removed the gravel, and used it on other streets.   This was within the authority of the city.   See *Griswold v. Bay City,* 35 Mich. 452; 2 Dill. Mun. Corp. § 689.   It appeared that the city originally bore a large portion of the expense of graveling, and has borne the entire expense of maintaining the street.   It would have been impossible to apportion the value of such gravel, or to treat it as the property of any person other than the city.   If it had appeared that the contract price of paving would have been less if the gravel had been allowed the contractor, there might be room for saying that the actual expense of improving the street was less than it was made to appear to be by the contract price.   But it appears that the successful bidder fixed precisely the same price for the improvement, with the gravel reserved to the city, as he demanded if he should be allowed to remove it.   Hence it affirmatively appears that the contract price was not increased.

The circuit judge granted the relief prayed on two grounds—*First,* because the assessment district upon which the tax was assessed was fixed by the common council after the repeal of the charter which empowered said council to do so, instead of leaving to the board of public works the duty of deciding what property should be

assessed, as required by the amended charter; and, *second*, because at the time of the confirmation of the assessment roll by the common council there was no proof, by affidavit or otherwise, before said council that the notice to persons interested in the premises was published as required by the charter.

Prior to the amendment of the charter, power was conferred upon the common council to provide for paving streets, and the council was authorized to determine that the whole or any part of the expenses should be defrayed by an assessment upon the lands to be benefited thereby; and the council was required to set forth the lots, blocks, and parcels of real estate which in its opinion would be benefited, and which should be assessed therefor. Local Acts of 1889, No. 455, tit. 6, § 5. It was then made the duty of the city clerk to certify a copy of the order to the assessor of the city, whose duty it was to proceed to make an assessment according to such order upon all property comprised in the assessment district, in proportion to the benefit and advantage which each description of property was by him deemed to receive from the making of said improvement. Id. tit. 6, § 6. By the terms of the amendment to the charter which took effect March 28, 1891,[1] the common council was still left the power to determine what portion of the expense should be defrayed by an assessment on the lands to be benefited by the improvement, and to determine by resolution—

"Whether the whole, or what portion, of the cost of such improvement shall be assessed to such lands: *Provided*, however, that the assessment which may be levied upon any block or parcel of real estate shall not exceed the benefit which it is especially deemed to have received by such improvement. When such improvement is completed, or as soon thereafter as may be convenient, the board of

[1] Act No. 257, Local Acts of 1891.

public works shall prepare a detailed statement of the cost of such improvement, showing the amount to be assessed upon the property benefited, as provided by the resolution ordering the said improvement."

Section 6 provides that this detailed statement shall be certified to the common council, and, when approved by the council, it—

"Shall be certified to the board of public works, who shall proceed without unnecessary delay to make an assessment, according to such order, of so much of the cost of said improvement as may have been ordered specially assessed, upon all property specially benefited, in proportion to the benefit and advantage which each description of property is by them deemed to receive from the making of said improvement."

Section 7 provides that the board—

"Shall certify upon such roll that they have made said assessment upon the property described, in accordance with the order of the common council relating thereto, and that the said roll contains the just and true assessment of the costs of such improvement, stating the sum thereof, and that the several amounts assessed against each description of property have been set down, to the best of the judgment of said board, according to the benefit and advantage which each description of property is by them deemed to receive from the making of said improvement, and that each parcel thereof is benefited specially by such improvement to the amount of the assessment thereon."

In the present case the proceedings were instituted before the amendment in question was adopted, and on the 30th day of March, evidently not being aware of the amendment to the charter which took effect two days before, the council adopted a resolution fixing an assessment district. On the 27th of April the council adopted the following preamble and resolution:

"Whereas, on the 9th day of February last the board of public works reported to this council statements of the cost of paving certain streets during the season of 1890, said statements showing the cost of said improvements to

be assessed upon the property benefited, and the amount paid from the highway funds; said statements were received, and on the 30th day of March the committee on taxes and assessments and city assessor reported taxing districts for said improvements, which were approved by this council, but the assessments have not been made, and the charter has been so amended that it becomes the duty of the board of public works to make all special assessments:

"*Therefore resolved,* that said statements of costs and assessing districts therefor be referred to the board of public works to make said assessments, and perform such duties as are necessary under the amended charter."

On the 2d of May an assessment roll was reported to the board of public works by the city engineer, and the following resolution adopted:

"*Resolved,* that said special assessment rolls    *,    *    * be and the same are hereby approved and adopted, and the board does assess the cost of the improvement of each of the streets mentioned in said rolls upon the several lots, blocks, and parcels of property *designated by the common council* and as specified in said assessment rolls, in proportion to the benefits which each, in the opinion of said board, derives specially from the improvement of said streets, and that such assessments be reported to the common council by the clerk of the board, properly certified."

The certificate of the board, attached to the roll, is as follows:

"The board of public works of the city of Saginaw, Michigan, hereby certify that it has made the within and foregoing assessment upon the property therein described, in accordance with the order of the common council relating thereto, and that the said assessment roll contains the just and true assessment of the cost of the improvement to which it relates, viz., $6,056.98, and that the said several amounts assessed against each description of property therein have been set down, to the best judgment of said board, in proportion and according to the benefit and advantage which each description therein is by said board deemed to receive from the making of said improvement, and that each parcel thereof is benefited specially by said improvement to the amount of the assessment thereof."

Thus far it follows the precise language of the statute, and the board further added:

"That the said assessment on any lot, block, or parcel of real estate so levied does not exceed the benefit which such lot, block, or parcel is specially deemed to receive by such improvement, and *that no lots, blocks, or parcels of real estate or property which is not set down and assessed in said roll are deemed by said board to be specially benefited by such improvement.*"

It will be noticed that this certificate specifically nega-- tives the claim that the board of public works deemed itself bound to limit its assessment to the assessing district which had been previously fixed by the common council; for the certificate indicates that it considered that question, and determined that there was no other lot, block, or parcel of real estate, not set down and assessed in the roll, deemed by the board to be specially benefited by the improvement. We think, therefore, that the court was in error in holding that the assessment was in any way influenced by the assessment district fixed by the common council. The fact that it happened that the assessment was made upon the same list of property is not inconsistent with the claim that the board of public works exercised its discretion. It will very often—and, indeed in most cases—occur that two independent bodies, assuming to fix an assessment district for such an improvement, will fix precisely the same district. In fact, it is a matter of common knowledge that in most instances the assessment district consists of the lots fronting upon the street improved. The city engineer, who did the clerical work of preparing the assessment, testifies that he did not regard the assessment district as fixed by the common council; and, while it is true that he was not able to point out wherein the districts differed, yet there is no testimony which fairly disputes the certificate that the board considered the question of whether any other property than

that designated was specially benefited by the improvement. This being so, and the certificate being in full compliance with the law, it should be held conclusive, in the absence of fraud. It is necessary to commit the duty of levying such assessments to somebody; and the court will not presume, nor, indeed, will it entertain the belief, in the absence of clear proofs, that there has been an intentional violation of their oaths of office by men selected to perform this duty. See *Powers v. City of Grand Rapids,* 98 Mich. 393; *Brown v. City of Grand Rapids,* 83 Id. 101.

It remains to be considered whether the court was right in holding that the common council had no jurisdiction to confirm the roll for the reason that it had no proof before it that the statutory notice had been given at the time of the meeting. This Court has held in a number of cases that, where the public authorities are seeking to acquire property under the right of eminent domain, it is requisite that the jurisdictional facts appear of record. *People v. Highway Commissioners,* 14 Mich. 528; *Dupont v. Highway Commissioners,* 28 Id. 362; *Bennett v. Drain Commissioners,* 56 Id. 634. See, also, *Coulter v. School Inspectors,* 59 Mich. 391; *Fractional School-Dist. No. 3 v. Inspectors of Martin,* 63 Id. 611; *Graves v. Board of Inspectors,* 102 Id. 634. But does this failure justify the interposition of a court of equity to set aside and vacate the assessment? The only case we have found which sustains the contention of the complainants is that of *Wilson v. City of Seattle,* 2 Wash. 543, cited in their brief. In the case of *Taber v. Ferguson,* 109 Ind. 227, 230, it was held that, where the statute does not require proof of publication of notice to be filed with the common council or clerk, the failure to file such proof is not fatal to the proceeding, if, in fact, notice was duly published. In the case of *State v. Council of City of Elizabeth,* 30 N. J. Law, 365, on *certiorari* to review an assessment made by

commissioners to cover the cost of paving a certain street, —the clerk of the council having died, and the street commissioner, who gave the notices, having removed from the state,—a rule was granted by the court, upon application in behalf of the council, permitting the examination of witnesses to show that the required notices were published and served, and, upon its being made to appear that such notices were in fact given, the assessment was sustained.

We need not, however, adopt the doctrine of the last two cases cited. The notice of hearing was in fact given. The complainants in fact had their opportunity to be heard, and, under these circumstances, we think it was clearly within the power of the Legislature to provide that the omission to file proof of the publication of notice should not operate to defeat the assessment, and we think the provisions of section 16 of title 6 of the charter are broad enough to cover the case in hand. This section provides that—

" All proceedings of the common council under the provisions of this title shall be matters of record in the proceedings of the common council, and shall not fail on account of any technical or clerical error made by any officer of the city, nor because of any act not being done at the time or in the manner herein required, unless the party complaining of such failure shall show affirmatively that he has been injured thereby."

The decree below will be reversed, and the bill dismissed, with costs to the defendants.

The other Justices concurred.