Argued May 21, affirmed September 17, 1918.

# DRAINAGE DISTRICT No. 7 v. BERNARDS.

(174 Pac. 1167.)

**Drains—Conclusiveness of Determination—Benefits.**

1. Where court, upon land owner's objection to inclusion of his land in proposed drainage district, decided such land would be benefited by the ditch and subsequently upon objection to levy of assessment and to amount thereof made similar finding, owner cannot raise same question on district's action to foreclose the lien of assessment.

**Drains—Purpose of Drainage—Public Use—Health.**

2. Drainage for benefit of the public health is for a public use.

**Drains—Purpose—Public Benefit—Agriculture—Swamp-land.**

3. The reclamation of large tracts of swampy lands for agricultural purposes is generally considered to be for the public benefit.

**Eminent Domain—Public Uses—Drainage District.**

4. Laws of 1889, page 25 (Section 6126, L. O. L.), as amended by Laws of 1911, page 424, providing for organization of drainage district upon petition of 25 per cent of owners desiring to drain land "for the public benefit for sanitary purposes," and Section 6128, L. O. L., as amended by Laws of 1911, page 424, requiring court to find that "district is of public utility and importance," provide for drainage for public uses and do not authorize taking of private property for private purposes.

[As to drainage districts, see note in Ann. Cas. 1915A, 9.]

**Drains—Drainage District—Statute—Petition.**

5. Section 6126, L. O. L., as amended by Laws of 1911, page 424, providing for organization of drainage district for public benefit and requiring petition to state "necessity for such drainage," *held* to require petition to allege that district is to be for a public purpose, and hence not unconstitutional.

**Drains—Drainage District—Statute—Petition—Public Purposes.**

6. A statute providing for organization of drainage districts is not necessarily unconstitutional because of failure to expressly require petition to allege the proposed district to be a public necessity.

**Constitutional Law—Due Process—Special Assessment—Notice.**

7. Though special assessment cannot be imposed upon property unless notice be given and owner afforded opportunity to be heard at some stage of the proceedings, personal notice is not required, and notice by publication or by posting is sufficient.

**Drains—Drainage Districts—Statutes—Notice.**

8. Section 6126, L. O. L., as amended by Laws of 1911, page 424, relating to formation of drainage districts and providing for published, posted and personal notice to owners of land within proposed district, is valid though provision as to personal service is too uncertain to be enforceable, provision as to notice by publication and post-

ing being sufficient, though no provision as to notice would have been necessary to statute's validity.

### Statutes—Validity—Unconstitutionality of Part.

9.   An entire statute is not invalid because one or more of the details or minor provisions or incidental clauses are unconstitutional, where invalid part may be eliminated without materially affecting the general purpose.

### Statutes—Partial Invalidity.

10.   Section 6136, L. O. L., as amended by Laws of 1911, page 424, providing for notice of assessment for drainage benefits by posting on bulletin in the courthouse and in such other manner as County Court may prescribe, *held* not invalid even though provision as to posting be declared invalid because of uncertainty; any notice by posting or publication being sufficient to satisfy "due process of law" requirement, and elimination of invalid part leaving valid remainder which gives court power to prescribe method of notice.

### Constitutional Law—Drains—Delegation of Legislative Power to Judiciary.

11.   Section 6136, L. O. L., as amended by Laws of 1911, page 424, giving court right to prescribe notice to be given land owners in drainage district of assessment for drainage benefits, *held* not a delegation of legislative power to the judiciary.

### Drains—Drainage Districts—Organization—Notice.

12.   A drainage district cannot be legally organized unless notice be given as prescribed by Section 6126, L. O. L., as amended by Laws of 1911, page 424.

### Drains—Drainage Districts—Assessment—Notice.

13.   An assessment for drainage benefits is not valid unless notice is given as provided by Section 6136, L. O. L., as amended by Laws of 1911, page 424.

### Drains—Assessment—Action—Evidence—Notice.

14.   In action to foreclose lien of assessment for drainage benefits where fact of service of notice of the organization of the district actually existed, it was competent in Circuit Court to supplement the proof of service submitted to the County Court, who had jurisdiction over organization of the district, with the parol testimony of deputy sheriff, who claims to have served notice.

### Drains—Statutes—Assessment—Enforcing Payment.

15.   Laws of 1915, page 540, repealing by implication Sections 6126–6145, L. O. L., relating to drainage districts, does not prevent a district from enforcing payment of a delinquent assessment, where all assessment proceedings were completed before the act of 1915 became effective; the assessment under Section 6136, L. O. L., as amended by Laws of 1911, page 424, having become lien on land, and act of 1915, although without saving clause, operating prospectively and not retrospectively.

### Statutes—Construction—Change of Statute.

16.   A change of statute will ordinarily be construed, if practicable, as having a prospective operation only.

**Constitutional Law—Bancroft Bonding Act—Contract Rights.**

17.   Where owners of land assessed for drainage benefits sign applications for right to pay in annual installments under Bancroft Bonding Act, they enter into contract which cannot be impaired by subsequent legislation.

**Statutes—Repeal—Effect on Pending Litigation.**

18.   The general rule is that the repeal of a statute without any reservation takes away all remedies given by repealed statute and defeats all actions pending under it at the time of its repeal; but, where repealing act relates to matters of procedure and substitutes new forms in place of old pending actions and proceedings already taken are not affected.

From Washington: GEORGE R. BAGLEY, Judge.

Department 2.

For appellants there was a brief over the names of *Messrs. Huston & Huston* and *Mr. H. T. Bagley,* with an oral argument by *Mr. S. B. Huston.*

For respondent there was a brief over the names of *Mr. E. B. Tongue* and *Mr. Thomas H. Tongue, Jr.,* with an oral argument by *Mr. E. B. Tongue.*

PER CURIAM.—This is a suit to foreclose the lien of an assessment levied by the plaintiff for the purpose of paying for a ditch which the drainage district proposes to construct.  The questions to be decided can be better considered if we first give a brief account of the history of the drainage district, including a narrative of what the defendants did.

A petition signed by thirty-one land owners was filed with the County Court on August 12, 1912, asking for the creation of drainage district No. 7, as provided for by Sections 6126 to 6145, L. O. L., inclusive, as amended by Chapter 241, Laws 1911.  The proposed boundaries embraced approximately 2,700 acres owned by about sixty-seven persons.  The defendant, Hubert Bernards, was the fee-simple owner of two tracts of

land within the boundaries of the proposed district, but his son Herman Bernards occupied the premises. The County Court fixed September 16, 1912, as the time for hearing the petition. The petition was published four weeks and was posted for the same length of time on the bulletin-board in the county courthouse and a copy was served on each record owner including Hubert Bernards. On September 16, 1912, the petitioners and objectors appeared in the County Court and thereupon the hearing was continued until September 24, 1912. Hubert Bernards and two others reduced their objections to writing and filed the paper with the County Court on September 23, 1912. The remonstrance signed by Bernards alleged: that the benefits will not exceed the cost; and that the Bernards lands should be excluded from the proposed district for the reason that they would be damaged rather than benefited. On September 24, 1912, the petitioners and objectors appeared with their respective attorneys. After hearing all the evidence submitted by the parties the County Court excluded six certain tracts of land owned by different persons and also a part of the lands owned by Hubert Bernards and then overruled the remonstrance signed by Bernards and approved the petition in compliance with Section 6128, L. O. L., as amended by Chapter 241, Laws 1911.

The plaintiff caused a line for a ditch to be located, surveyed and staked out through the drainage district; afterwards the engineer prepared specifications and estimates for the proposed ditch; and then on August 18, 1914, a complete report of what had been done was filed with the County Court by the board of directors. The County Court approved the report and appointed viewers to assess the benefits to be derived from the ditch. After viewing the premises and

making the assessments, the viewers made a report
to the County Court on September 4, 1914, showing
the description of each tract of land, the name of the
owner, the number of acres in each tract and the
amount of the assessments charged against the respec-
tive tracts of land.   The court fixed October 9, 1914,
as the time for hearing the report and considering
any objections that might be made.   Notice of the
hearing was duly given.   On October 9, 1914, Hubert
Bernards filed objections to the assessments made
against his lands alleging that his property would not
be benefited and that the assessment was unjust.   The
court postponed the hearing until October 15, 1914,
when the plaintiff and its attorneys, Hubert Bernards
and his attorneys and several other owners of land
in the district appeared and submitted their evidence
to the County Court.   On the following day the
County Court overruled the objections filed by Hu-
bert Bernards, approved the assessment of $528.89
against his lands, and ordered the assessment to be
docketed.   With the exception of Hubert Bernards all
the 67 persons owning land in the district have either
paid their assessments or made application under the
Bancroft Bonding Act to pay the amount in annual
installments.   The assessment against the Bernards
property became delinquent, and pursuant to the order
of the County Court this suit was brought for the col-
lection of the assessment as provided by Section 6136,
L. O. L., as amended by Chapter 241, Laws 1911.

On March 14, 1914, the drainage district commenced
an action against the defendants for the condemnation
of a right of way for the ditch to be dug across the
Bernards lands.   The action came on for trial on May
1, 1914, and while the jury was viewing the premises
the plaintiffs and defendants entered into an agree-

ment settling the controversy. The agreement was not formally reduced to writing. The plaintiff agreed to dismiss the action and to pay Hubert Bernards $525. The defendants agreed that Hubert Bernards would convey a right of way to the district. The plaintiff claims that Hubert Bernards agreed to "do whatever was in his power to assist in the establishment, maintenance and carrying out of the objects of said drainage district," and that "he reserved only the right to contest the amount of any assessment that might be levied against his property."

The record does not show whether Herman Bernards was in possession as a lessee or whether he merely occupied the premises as a hired man or otherwise in 1912. Afterward Hubert Bernards conveyed the property to his son Herman Bernards, subject, however, to a life estate reserved by Hubert Bernards. The exact date of this transfer is not disclosed by the record, although it does fairly appear from the testimony that the conveyance was made in 1915, "before the first of March, so it would be assessed to" Herman Bernards.

·Twenty-two separate sheriff's returns were made and filed prior to the hearing of the petition for the organization of the district. Some of these returns showed service of the petition upon a single person while others recited service upon more than a single owner or person in possession, but none of the returns mentioned the name of Herman Bernards. The order made by the County Court on September 24, 1912, recites that: "it appearing to the court from the returns of" the sheriffs of four different counties

"that all the record owners and persons in possession of the lands included within the district proposed to be established as said drainage district, as described

in said petition, have been personally served within the county in which they reside, with a copy of the petition and a copy of the notice showing when said petition would be presented."

On April 17, 1916, the drainage district filed a motion in the County Court, supported by an affidavit bearing the same date, for an order authorizing an amendment of the sheriff's return so as to show that Herman Bernards had been regularly served with a copy of the petition. The accompanying affidavit was made by O. E. Quick, who swore that during the month of September, 1912, Geo. G. Hancock was the sheriff and the affiant was a deputy sheriff of Washington County; that on September 1, 1912, the sheriff gave to the affiant for service on Herman Bernards a copy of the petition for the formation of the drainage district and a copy of the notice giving the time for the hearing, certified to by one of the attorneys for the petitioners; and that on September 4, 1912, the affiant delivered the copy of the petition and the copy of the notice to Herman Bernards personally in Washington County. On the same day, April 17, 1916, the County Court made an order permitting the sheriff's return

"to be amended so as to show that Herman Bernards was duly and legally and regularly served with a proper certified copy of said petition and notice of the hearing thereof within Washington County, Oregon, on September 4, 1912."

O. E. Quick appeared as a witness for the plaintiff in this suit and testified that he was still serving as deputy sheriff, although Hancock's term as sheriff had expired before April 17, 1916; and that he served the petition and notice on Herman Bernards on September 4, 1912, giving a detailed account of how he went to the premises, who was with him, and where

the service was made. The defendants offered contradictory evidence. The trial court made an express finding to the effect that Herman Bernards was served with a copy of the petition and notice prior to the time set for the hearing of the petition. At the very conclusion of the trial in the Circuit Court the defendants agreed that the order made by the County Court, on April 17, 1916, "may be treated as having been entered of record"; that it was "properly made"; and "a good and valid order."

The complaint alleges that the plaintiff is a duly organized and existing drainage district and then recites the successive steps taken in making and levying the assessment; the pleading avers that the Bernards assessment is delinquent and concludes with a prayer for a judgment against the property for the amount of the assessment and that the land be ordered sold for the purpose of satisfying the judgment.

Hubert Bernards and Herman Bernards and his wife answered by denying certain portions of the complaint and by alleging that: (1) the plaintiff was not a legally existing corporation because Sections 6126 to 6145, L. O. L., and Chapter 241, Laws 1911, were unconstitutional and void for the reason that the legislation attempted to provide for taking property without due process of law and without notice; (2) a copy of the petition was never served upon Herman Bernards and hence jurisdiction to organize the district was never acquired; and (3) the proposed ditch "will not in any way drain said lands and will not be in any way beneficial to said lands."

The reply contains an account of the remonstrance made by Hubert Bernards to the formation of the district and of the objections urged by him against the assessment and alleges that he ought to be precluded

from denying the validity of the organization of the district and from claiming that his lands would not be benefited, for the reason that it was twice decided by the County Court that his lands were properly included in the district and that his property would be benefited by a ditch and once decided that the amount of the assessment was proper and just.

The reply also gives an account of the commencement and settlement of the action for the condemnation of a right of way for the ditch through the Bernards property; and it is alleged that relying upon the agreement for the settlement of the controversy the plaintiff expended large sums of money with the knowledge of defendants and that therefore the defendants ought to be precluded from asserting that the plaintiff is not a legally organized drainage district.

The reply contains averments to the effect that Herman Bernards appeared and testified as a witness when the County Court heard the remonstrance of Hubert Bernards against the petition for the organization of the district; that he testified as a witness when the County Court heard the objections made by Hubert Bernards against the assessment; and that he was present and heard the negotiations that resulted in the settlement and dismissal of the condemnation action.   The plaintiffs say in their reply that Herman Bernards never questioned the legality of the formation of the drainage district until the defendants filed their answer in this suit and that, therefore, he ought not to be permitted now to deny the existence of the plaintiff.

The reply also affirmatively avers that a copy of the petition was served upon Herman Bernards personally on September 4, 1914.

The trial court found from the evidence that the plaintiff was a legally organized drainage district; that "Herman Bernards was served with a copy of the petition and notice prior to the time set for the hearing of the organization of said drainage district"; that the ditch "will be of benefit to the" Bernards lands; and "that the amount of said assessment is not disproportionate to the benefits to be derived by said land." The court awarded the plaintiff a judgment against the Bernards lands for the amount of the assessment, costs and disbursements and rendered a decree ordering a sale of the property. The defendants appealed.

In brief, the defendants contend that: (1) Their land will not be benefited; (2) Sections 6126 to 6145, L. O. L., inclusive, as well as the amendatory statute found in Chapter 241, Laws 1911, are unconstitutional and so vague as to be unenforceable; (3) that jurisdiction to create the district was never acquired because of a failure to serve Herman Bernards with a copy of the petition; and (4) the legislation under which plaintiff attempted to establish and foreclose a lien was repealed by Chapter 340, Laws 1915, without any saving clause, and that it was again repealed by Chapter 415, Laws 1917.

1. The statute provides for notice of the intended organization of a drainage district. Notice is given by publication in a newspaper, by posting and by personal service. Hubert Bernards appeared pursuant to the notice and objected to the inclusion of his lands, claiming that his property would not be benefited. A hearing resulted in a decision adverse to his contention. The statute also requires notice to be given of the date fixed for reviewing and considering the assessments reported by the viewers and an opportunity is given

land owners to appear and object. The required notice was given and Hubert Bernards appeared and objected to the levying of an assessment upon his lands, asserting that his property would not be benefited, and that even though it might be benefited the amount of the assessment was disproportionate to the benefit. These objections were overruled. The County Court twice decided that the Bernards lands would be benefited and the Circuit Court took the same view. The evidence justified the Circuit Court in finding that the Bernards property would be benefited and that the amount of the assessment was not disproportionate to the benefits that will be received; and, moreover, in the absence of fraud the defendants cannot, in this suit, question the amount of the assessment: *Houck* v. *Roseburg*, 56 Or. 238, 244 (108 Pac. 186) ; 14 Cyc. 1064; 9 R. C. L. 659.

In their first printed brief the defendants contend that the statutes under which the drainage district was organized are unconstitutional because "there is no pretense in the statute that the property is to be taken for public use"; and in their reply brief the defendants argue that the legislation is void because "there is no requirement that the petition shall allege that the purpose for which the lands are to be taken is a public use."

Although neither the allegations in the petition nor the findings made by the court could impart validity to an unconstitutional statute, nevertheless, before examining the questioned enactments, attention will be directed to the petition and to the findings made by the County Court. The petition alleges:

"That most of said land above described is low, marshy land, and is subject to overflow during the rainy seasons of the year, and a large part of said land

cannot be cultivated or farmed at all for lack of drainage.

"That your petitioners herein desire to drain all of said tract of land for the public benefit, for the improvement of sanitary conditions and the health of the people residing in said district, for the improvement of agriculture, and for the purpose of preparing said land for cultivation, and for the prevention of the overflow of said land by flood water or any possible rise over the level of the subsurface water thereof.

"That a large part of the land situated in said proposed drainage district is in a valley, and is low, marshy land, upon which water stands the greater part of the year, and is not susceptible of cultivation unless drained, and large pools of stagnant water stand upon said land in the summer, rendering the neighborhood unsanitary and unhealthy, and that it is necessary for the protection of the health of a large number of residents living in said district above mentioned, and for the improvement of a large tract of land in said district, and for rendering it subject to cultivation, and for the removal of the flood water upon said land, that the proposed drainage district should be established, and the territory above mentioned be drained in such a manner that the ends and purposes just mentioned will be attained."

After hearing the evidence the County Court found that the existing conditions were as alleged by the petitioners.

2, 3. Drainage for the benefit of the public health is for a public use and drainage for the reclamation of large tracts of swampy lands for agricultural purposes is likewise generally considered to be for the public benefit, and consequently we must conclude that the petition sufficiently alleged, and the County Court expressly found, that the proposed ditch would be for a public use: *Seely* v. *Sebastian,* 4 Or. 25, 30; *Mittman* v. *Farmer,* 162 Iowa, 364 (142 N. W. 991, Ann. Cas.

1915C, 1); *Billings Sugar Co.* v. *Fish,* 40 Mont. 256 (106 Pac. 565, 20 Ann. Cas. 264, 26 L. R. A. (N. S.) 973); 9 R. C. L. 625, 626.

4–6. Sections 6126 to 6145, L. O. L., inclusive, except, however, Sections 6133 and 6134, were originally adopted in 1889 as parts of an act entitled "An act to promote drainage for agricultural and sanitary purposes": Laws 1889, p. 25. Section 6126, as amended by Chapter 241, Laws 1911, states that whenever 25 per cent of the owners "desire to drain the same for the public benefit for sanitary purposes for the improvement, * * *" they may present a petition for the organization of a drainage district. The same section requires the petition to state "the necessity for such drainage." By the express terms of Section 6128, L. O. L., as amended by Chapter 241, Laws 1911, the petition cannot be approved unless "the court find that the district is of public utility and importance, and that the benefits to be derived from the proposed drainage will exceed the cost thereof. * * *" Thus it is seen that in its title the statute makes avowal of its public purpose; that the privilege of filing a petition is offered only to those owners who desire to drain lands "for the public benefit"; that the petition must state "the necessity for such drainage"; and that the court must "find that the district is of public utility and importance." Obviously "the necessity" which must appear in the petition refers to the public necessity. Of course the statute cannot be sustained if it is designed to take private property for a private purpose. It has been held in a well-considered case, and upon reasoning which seems to be unanswerable, that it is not necessary that a drainage act should specifically state that the enactment is for a public purpose, but it is sufficient if, from all the provisions of

the statute, it reasonably appears that it is for that purpose: *State* v. *Board of Commrs. of Polk County,* 87 Minn. 325 (92 N. W. 216, 60 L. R. A. 161). To the same effect are: *Laguna Drainage Dist.* v. *Charles Martin Co.,* 144 Cal. 209, 214 (77 Pac. 933), and *Brown* v. *Keener,* 74 N. C. 714. The statute under consideration does not attempt to authorize the taking of private property for private purposes but in plain and unequivocal language its operation is confined to public uses. The contention that the statute does not require the petition to allege that the district is to be for a public purpose and that the legislation is on that account unconstitutional is answered by Section 6126, L. O. L., as amended by chapter 241, Laws 1911, where it is required that the petition shall state "the necessity for such drainage"; and this requirement to allege "the necessity of such drainage" is fully satisfied by the allegations found in the petition: *Corey* v. *Swagger,* 74 Ind. 211, 213. However, the statute would not necessarily be unconstitutional, even though it did not in terms require the petition to allege that the proposed drainage district was a public necessity: *Kinnie* v. *Bare,* 80 Mich. 345 (45 N. W. 345); 14 Cyc. 1032; 9 R. C. L. 635.

Invoking the doctrine announced and applied in *Leffingwell* v. *Lane County,* 64 Or. 144 (129 Pac. 538), the defendants contend that Section 6126, L. O. L., as amended by Chapter 241, Laws 1911, is so vague and uncertain as to be unenforceable. Section 6126, L. O. L., is the opening section of the chapter providing for the organization of drainage districts, and after stating when a petition may be filed and specifying what the petition should contain, the statute, as amended by Chapter 241, Laws 1911, requires that the petition

"must be published for four weeks preceding the date designated in the petition for the hearing thereof in some newspaper published in each county in which the lands included in said district are situate, and must be posted for the same length of time on bulletin-board in the county courthouse of each such county; and a copy thereof shall be served on each record owner and person in possession of such lands if to be found within the county or counties in which such proposed drainage district may be located."

It will be observed that the statute requires the notice: (1) to be published for four weeks in a newspaper; (2) to be posted for four weeks on a bulletin-board in the courthouse; and (3) to be served on each record owner and occupant of the lands within the proposed district. The argument of the defendants is that the statute is indefinite and uncertain because: (a) it does not provide whether proof of service on each record owner and occupant shall be made prior or subsequent to the meeting of the County Court; (b) it does not provide for how long a time the notice shall be personally served or given; and (c) it does not provide a method of proving that notice has been given.

7, 8. It must be borne in mind that Section 6126, as amended, relates only to the formation of a drainage district and that it does not involve the taking of private property; and hence, the statute would be valid, even though it made no provision at all for notice of the proposed formation of a drainage district: *Paulsen* v. *City of Portland,* 149 U. S. 30, 40 (37 L. Ed. 637, 13 Sup. Ct. Rep. 750); *Ross* v. *Board of Supervisors,* 128 Iowa, 427 (104 N. W. 506, 1 L. R. A. (N. S.) 431); *Spencer* v. *Merchant,* 125 U. S. 345, 355 (31 L. Ed. 763, 8 Sup. Ct. Rep. 921); *Phipps* v. *Medford,* 81 Or. 119, 124 (156 Pac. 787, 158 Pac. 666). But if it be assumed

that the "due process of law" clause of the Constitution requires notice so that the owner would be afforded an opportunity to be heard it probably would not be claimed and it certainly could not be successfully contended that the formation of a drainage district requires any more notice than would be requisite or a form of notice different from that which would be sufficient to validate the laying of an assessment upon property benefited by an improvement. It is true that a special assessment cannot be imposed upon property unless notice be given and the owner afforded an opportunity to be heard at some stage of the proceedings; but it is also true that the nature of the proceeding is such that personal service of notice is not required and consequently notice by publication in the newspaper ·or by posting is sufficient to satisfy the command of the Constitution: *Paulsen* v. *Portland,* 149 U. S. 30, 40 (37 L. Ed. 637, 13 Sup. Ct. Rep. 750); *Swain* v. *Fulmer,* 135 Ind. 8, 12; *Carr* v. *State,* 103 Ind. 548 (3 N. E. 375); *Klein* v. *Tuhey,* 13 Ind. App. 74, 76 (40 N. E. 144); *Hennessy* v. *Douglas County,* 99 Wis. 129, 153 (74 N. W. 983); *Lent* v. *Tillson,* 140 U. S. 316 (35 L. Ed. 419, 11 Sup. Ct. Rep. 825); 6 R. C. L. 450; 28 Cyc. 983. In other words, Section 6126, as amended, would be valid even though it did not require any notice whatever; and even though it be assumed that notice is necessary it would nevertheless be valid if it only provided for notice by publication and posting.

9. That part of the statute which speaks of personal service of the petition upon the record owners and occupants does not fix the time for service. The enactment merely requires personal service and does not specify any time when service must be made. For the purposes of this case, it may be assumed, but it

is not decided, that the clause which directs personal service of the petition is too vague and uncertain to be enforceable.   The assumption that the clause relating to personal service of the petition is invalid does not necessarily compel the conclusion that the whole statute is invalid, for it may be that the invalid part may be pruned out so as to leave the remainder a valid and enforceable statute.   If the general scope and purpose of the legislation under consideration are constitutional and constitutional means are provided for effecting the general purpose of the legislation the entire statute will not be declared void because one or more of the details, or minor provisions, or incidental clauses are not in accordance with the Constitution; provided, the invalid part may be eliminated without materially affecting the general purpose: *Lowery* v. *School Trustees,* 140 N. C. 33 (52 S. E. 267); *State* v. *Kelsey,* 44 N. J. L. 1.   In 26 Am. & Eng. Ency. of Law (2 ed.), 570, the rule is stated thus:

"Where the provisions are so interdependent that one may not operate without the other, or so related in substance and object that it is impossible to suppose that the legislature would have passed the one without the other, the whole must fail; but if, when the unconstitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained."

When the clause relating to personal service is stricken out, that which remains still provides for notice to the owners and occupants of the lands, is complete in itself and capable of being executed in accordance with the apparent legislative intent; and therefore the assumed invalid part does not affect or impair the remainder of the legislation.

The defendants contend that Section 6136, L. O. L., as amended by Chapter 241, Laws 1911, is also open to the objection that it is too vague and uncertain to be enforceable. After empowering the County Court to appoint viewers to view the lands and make an assessment of the benefits to be derived from an improvement, Section 6136, as amended, continues by directing the viewers to report the assessment made by them to the County Court which shall review and consider the assessment at a subsequent term to be fixed by its order, "and of which notice shall be given by posting the same on the bulletin-board in the county courthouse in each county embraced in the district, and in such other manner as the County Court may prescribe." In the instant case, the County Court fixed October 9, 1914, as the time for reviewing the report of the viewers and directed the county clerk to give notice of the hearing by posting a notice on the bulletin-board in the courthouse and at three places in the drainage district for a period of not less than ten days prior to the hearing and by mailing a notice to each owner at least ten days before the hearing. The county clerk executed the order of the County Court and gave the notice by posting on the bulletin-board in the courthouse and by posting at three places in the drainage district and by mailing a notice to each owner, including Hubert Bernards. Moreover, Hubert Bernards appeared pursuant to the notice and contested the assessment. It will be noted that Section 6136, as amended, provides that notice shall be given: (1) by posting on the bulletin-board in the courthouse; and (2) in such other manner as the County Court may prescribe. The defendants argue that all that portion of the section which speaks of posting on the bulletin-board is invalid because it does

not prescribe the period of posting, or when the notice is to be posted, or what proof is to be made of posting or how proof is to be preserved.

10, 11. It must be conceded that an assessment could not be charged against the Bernards property unless notice was given; but it must also be conceded that personal service of notice was not essential since, because of the nature of the proceeding, it is sufficient if notice is given by posting and publication or by either posting or publication; and therefore if the statute had gone no further than merely to direct that notice should be given in such manner as the County Court may prescribe the constitutional requirement of "due process of law" would have been satisfied. Nor would such a statute amount to a delegation of legislative power to the judiciary: *State* v. *Adams Express Co.,* 66 Minn. 271 (68 N. W. 1085, 38 L. R. A. 225); 12 C. J. 855. It may be assumed then, but it is not decided, that all that part of Section 6136, as amended, which provides for posting on the bulletin-board is too indefinite and uncertain to be enforced. This assumption of the partial invalidity of Section 6136, as amended, results in a situation like the one presented by Section 6126, as amended. Testing Section 6136, as amended, by the rule applied to Section 6126, as amended, it will be seen that the elimination of the uncertain portion of the statute leaves a valid remainder which is complete in itself and is capable of being executed in accordance with the apparent legislative intent. The County Court exercised the power conferred upon it and directed that notice be given not only by posting in the courthouse but also by posting in the drainage district and by mailing to the owners; and, moreover, Hubert Bernards, who was the fee-simple owner of the premises, actually

appeared in response to the notice and contested the assessment.

12–14. The validity of the drainage legislation under consideration is not affected by reason of the fact that Section 6126, L. O. L., as amended, does not provide for proof of service of notice nor is the statute impaired on account of the failure of Section 6136, as amended, expressly to require proof of service of notice. It may be conceded that the district could not have been legally formed unless the notice prescribed by the statute was actually given; and it may also be admitted that a valid assessment could not have been made unless the notice required by the statute was given. The giving of notice is the essential element and is the ultimate fact upon which the jurisdiction of the County Court is dependent; and since the statute does not provide for the manner in which that fact may be made to appear the proofs actually submitted to the County Court were adequate and sufficient for the purpose. Quite a different situation would be presented if the statute expressly provided for the mode of proof and there had been a failure to comply with the statutory requirement; and a different case would also be presented if the proceeding were one which the parties were entitled to have tried in a court. Before adjudging the formation of the district, proof of service of the notice was made and filed with the County Court and that tribunal expressly found from the returns made by the several sheriffs that all the record owners and occupants of lands included within the proposed district had been personally served with a copy of the petition. In other words, the important questions are: Was the required notice really given? Was Herman Bernards actually served? It is conceded that notice was posted and

published as required by Section 6126, as amended, and while the defendants insist that Herman Bernards was not personally served, they concede that notice was personally served on all other owners and occupants. The circuit judge found that the notice was in truth served upon Herman Bernards and while the evidence is conflicting, we approve the finding of the circuit judge because he had the advantage of seeing and hearing the witnesses. Since the fact of service of notice actually existed it was competent in the Circuit Court to supplement the proof of service, submitted to the County Court and the finding made by that tribunal, with the parol testimony of O. E. Quick, the deputy sheriff who claims to have served the notice on Herman Bernards. In *Clinton* v. *City of Portland,* 26 Or. 410, 418 (38 Pac. 407), this court, speaking through Mr. Justice MOORE in an analogous case, held that

"parol evidence to show facts omitted to be stated upon the record is admissible, unless the law expressly requires them to be in writing, and makes the record the only evidence. * * This degree of proof not being required by the charter, every fact necessary to prove the publication of the notice could be and was established by extrinsic evidence."

Our conclusion is that the statute is valid and that the proceedings were regular. This conclusion disposes of the contentions made by the defendants concerning the failure of the statute to provide for the manner or the form of the service as well as the contentions of the defendants relating to the amendment of the return so as to show service on Herman Bernards. In addition to *Clinton* v. *City of Portland,* 26 Or. 410 (38 Pac. 407), our conclusion upon the subject of proof of service is supported by the following authorities: Hamilton on Special Assessments, § 371;

*Rue* v. *Chicago,* 66 Ill. 256; *Lingle* v. *Chicago,* 172 Ill. 170 (50 N. E. 192); *City of Seattle* v. *Doran,* 5 Wash. 482 (32 Pac. 105, 1002); *State* v. *Several Parcels of Land,* 76 Neb. 320 (107 N. W. 566); *Larson* v. *People,* 170 Ill. 93 (48 N. E. 443); *Shimmons* v. *City of Saginaw,* 104 Mich. 511 (62 N. W. 725); *Chung Yow* v. *Hop Chong,* 11 Or. 220, 221 (4 Pac. 326); *Smith* v. *Jefferson,* 75 Or. 179, 193 (146 Pac. 809). See. also, *Russell* v. *Durham,* 16 Ky. Law Rep. 516 (29 S. W. 16).

In 1915 the legislature enacted a new statute, relating to drainage districts: Chapter 340, Laws 1915. In *State* v. *Nyssa-Arcadia Drainage Dist.,* 80 Or. 524, 526 (157 Pac. 804), this new statute was held to be a substitute for prior legislation upon the subject and it was therefore decided that by implication Chapter 340, Laws 1915, repealed the previous statutes. Section 6131, L. O. L., was expressly repealed by Chapter 241, Laws 1911, and the remainder of the chapter on drainage districts, being Sections 6126 to 6145, L. O. L., inclusive, was expressly repealed by Chapter 415, Laws 1917. In brief, all the legislation upon the subject of drainage as codified in Sections 6126 to 6145, L. O. L., and as amended by Chapter 241, Laws 1911, was repealed (a) by implication by Chapter 340, Laws 1915; and (b) by the express terms of Chapter 415, Laws 1917. The defendants contend that the statutes of 1915 and 1917 operate to prevent the plaintiff from enforcing payment of the assessment levied upon the Bernards lands. All the assessment proceedings were completed before the act of 1915 became effective. The assessment was made by the viewers, equalized and approved by the County Court, and placed upon an assessment-roll and in the language of Section 6136, L. O. L., as amended by Chapter 241, Laws of 1911:

"Thereupon such assessment shall become a lien upon the lands therein described, and shall be collected in like manner as general taxes are collected, or by civil suit or action, as the County Court may direct.''

Section 6136, as amended, permits an owner to pay an assessment in a lump sum or to make application under the Bancroft Bonding Act to pay in annual installments. On February 25, 1915, the county treasurer made a report showing that the time for paying assessments, or making application under the Bancroft Bonding Act, expired on February 23, 1915; that up to February 23, 1915, Hubert Bernards and two others had permitted the assessments charged against their respective lands to become delinquent; that fifteen owners had paid in full and that all the remaining owners had made application under the Bancroft Bonding Act for the right to pay in annual installments.

Pursuant to an order made by the County Court this suit was commenced by the filing of a complaint on July 10, 1915. A trial was had in the Circuit Court and on June 5, 1916, resulted in a judgment and decree for the plaintiff. Chapter 415, Laws 1917, did not become effective until May 20, 1917: *Cooper* v. *Fox,* 87 Or. 657 (171 Pac. 408).

15, 16. Chapter 340, Laws of 1915, does not contain a saving clause. While it is true that the statute of 1915 is a substitute for prior legislation, nevertheless it is apparent that the legislature intended that the new statute should operate prospectively and not retrospectively. It is not necessary to analyze the act of 1915, but it is sufficient to say that an examination of the statute will make it plain that the legislature only intended the new statute to operate in the future. The act of 1915 speaks of the future rather than of the past when it provides a plan for the organization of drainage

districts and a scheme for levying and collecting a tax for improvements. A change of statute will ordinarily be construed, if practicable, as having a prospective operation only, and as applying solely to subsequent improvements; or as stated in 1 Page and Jones on Taxation by Assessment, Section 263,

"a change of statute which does not apply in express terms or by necessary implication to pending proceedings will not be regarded as applying thereto."

17. The applications which most of the owners signed under the Bancroft Bonding Act resulted in contracts imposing obligations which bind both parties and which cannot be impaired by subsequent legislation: *Colby* v. *Medford,* 85 Or. 485 (167 Pac. 487). To hold with the defendants is to hold that by the act of 1915 the legislature intended to remit all delinquent drainage assessments not brought within the provisions of the Bancroft Bonding Act and that the legislature did not, because it could not, remit, interfere with or affect any unpaid assessments brought within the embrace of the Bancroft Bonding Act. Such a result must be expressed in clear and unequivocal language before a court would be warranted in giving this statute a retrospective operation: *Smith* v. *Kelly,* 24 Or. 464, 473 (33 Pac. 642); *Wist* v. *Grand Lodge A. O. U. W.,* 22 Or. 271, 283 (29 Pac. 610, 29 Am. St. Rep. 603); *Oakland* v. *Whipple,* 44 Cal. 303; *Pennsylvania Co.* v. *Cole,* 132 Fed. 668; *Garrick* v. *Chamberlain,* 97 Ill. 620; 2 Page and Jones on Taxation by Assessment, § 1113.

18. Chapter 415, Laws of 1917, is a pure repealing statute, for its operation is confined to a repeal of the legislation which prevailed prior to the act of 1915. By the act of 1917 the legislature only accomplished by a statute what the court had already accomplished by a judicial decision. The manifest purpose of the act of

1917 was to make it clear that after the act of 1915 became effective drainage districts could not be organized or assessment proceedings commenced under Sections 6126 to 6145, L. O. L., as amended in 1911, but that drainage districts must be organized and assessment proceedings commenced under the statute of 1915. If the act of 1917 had repealed all legislation upon the subject of drainage districts then a different problem would be presented. The distinction between a statute which entirely withdraws jurisdiction over the subject matter of a repealed statute and one which merely changes the form of procedure is exemplified in *The Hickory Tree Road,* 43 Pa. St. 139. The act of 1915 simply provided a new procedure in the County Court for the organization of drainage districts and a new plan for paying for improvements; and since the act of 1917 did not abolish all procedure for organizing drainage districts and did not repeal all plans for making improvements and assessments and did not attempt to remove drainage districts from the jurisdiction of the County Court, this statute must be construed in connection with the act of 1915 and interpreted as though it were a part of the act of 1915. In other words, the act of 1917 does not produce a result different from that which would be produced if the act of 1915 had contained a section expressly repealing all prior drainage legislation. The general rule is that the repeal of a statute without any reservation takes away all remedies given by the repealed statute and defeats all actions pending under it at the time of its repeal: 36 Cyc. 1228; *State* v. *Ju Nun,* 53 Or. 1 (97 Pac. 96, 98 Pac. 513). But to this general rule there are exceptions. One of the exceptions is tersely stated in 36 Cyc. 1229, thus:

"Where the repealing act relates merely to matters of procedure and substitutes new forms or methods

in place of the old, the action does not abate, nor is the validity of proceedings already taken affected; further proceedings in such a case are had, so far as possible, under the new law, and where it does not apply are conducted in accordance with the old.''

Apt illustrations of the quoted rule are found in the following precedents: *Newsom* v. *Greenwood,* 4 Or. 120–122; *Danforth* v. *Smith,* 23 Vt. 247; *Pittsburgh etc. R. Co.* v. *Oglesby,* 165 Ind. 542 (76 N. E. 165); *Knoup* v. *Piqua Branch of State Bank,* 1 Ohio St. 603. As stated in *Uwchlan Township Road,* 30 Pa. St. 156, 158,

''we cannot presume that the legislature, by changing the forms of proceedings, intend to strike down or forbid any further progress in one already commenced.''

The act of 1915 did not preclude the Circuit Court from rendering the judgment and decree entered in June, 1916; nor does the statute of 1917 prevent this court from affirming that judgment and decree.

The judgment and decree appealed from are affirmed.

AFFIRMED.

HARRIS, J., sat for MCCAMANT, J.