*In re* AUDITOR GENERAL'S PETITION AS TO 1938 TAX SALE.

OAKLAND COUNTY PROSECUTING ATTORNEY *v.* AUDITOR GENERAL.

1. TAXATION—SCAVENGER SALE—CHURCH PROPERTIES—SPECIAL ASSESSMENTS—WITHHOLDING FROM SALE.

Under provisions of the so-called scavenger act that the State land office board should sell at public auction to the highest bidder lands to which the State had acquired title by reason of delinquency in payment of taxes at a minimum of 25 per cent. of the assessed valuation, houses of public worship were properly withheld from sale for delinquency in payment of special assessments in view of the fact that such places are not entered upon tax rolls with any assessed valuation (1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933; Act No, 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

2. CONSTITUTIONAL LAW—CANCELLATION OF TAX SALE OF CHURCH PROPERTIES—SPECIAL ASSESSMENTS.

   The cancellation of past and future sales of houses of public worship for delinquency in the payment of special assessments is a matter of relief, obtainable by legislation only and not by judicial decree (Const. 1908, art. 2, § 3).

3. SAME—EXEMPTION OF RELIGIOUS SOCIETIES FROM TAXATION.

   The extent to which religious organizations may be relieved of the burdens of taxation is clearly a question for the legislature (Const. 1908, art. 2, § 3).

4. TAXATION—EXEMPTIONS—RELIGIOUS SOCIETIES—SPECIAL ASSESSMENTS.

   Special assessments for ·sewers, pavements and other improvements authorized by law do not fall within the exemption granted religious organizations by the general property tax law (1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933).

5. SAME—SPECIAL ASSESSMENTS—RELIGIOUS SOCIETIES—STATUTES.

   Special assessments upon church properties for sewers, pavements, and other improvements within districts, presumably established pursuant to statutory authority, may not be cancelled because improvements were not immediately adjacent to church-owned properties within such districts, and, since enactment of legislation providing for fixing an assessed valuation and redemption from sale, decree cancelling tax sale for delinquency in payment of special assessments for such improvements was erroneous (1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933; Act No. 155, §§ 7, 8d, Pub. Acts 1937, as amended and added by Act No. 363, Pub. Acts 1941).

6. COSTS—PUBLIC QUESTIONS—CHURCHES—SPECIAL ASSESSMENTS.

   No costs are allowed in suit to determine liability of churches for payment of special assessments against their properties, a public question being involved (Const. 1908, art. 2, § 3; 1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933; Act No. 155, §§ 7, 8d, Pub. Acts 1937, as amended and added by Act No. 363, Pub. Acts 1941).

Appeal from Oakland; Doty (Frank L.), J. Submitted October 22, 1941. (Docket No. 56, Calendar No. 41,718.) Decided January 5, 1942.

In the matter of the petition of George T. Gundry, Auditor General of the State of Michigan, for the sale of delinquent lands, 1938 tax sale. Charles L. Wilson, Prosecuting Attorney of Oakland County, filed a bill against Vernon J. Brown, Auditor General of the State of Michigan, and State Land Office Board and others for instructions regarding sale of property owned by religious societies for delinquent special assessments. Decree ordering cancellation of taxes and reconveyances. Defendants appeal. Reversed.

*Charles L. Wilson,* Prosecuting Attorney, and *Harry J. Merritt,* Corporation Counsel, for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Peter E. Bradt,* Assistant Attorney General, for defendants.

NORTH, J. The State land office board and auditor general have appealed from a decree entered in the circuit court of Oakland county which primarily involves the right of the State or its municipal subdivisions to levy special assessments against church-owned properties and in case of delinquency to enforce payment of such special assessments by sale of the assessed properties in the manner provided for the collection of such assessments when levied against privately-owned property.

These proceedings were instituted by the petition of the prosecuting attorney of Oakland county, such action being deemed proper by reason of the statutory duties imposed upon the prosecuting attorney by 1 Comp. Laws 1929, § 3493 (Stat. Ann. § 7.154). In the petition it is recited that the properties of the respective religious organizations were sold "for failure to pay taxes for the years 1935 and prior, said petition (for general tax sale) having been

filed on the 4th day of March, A. D. 1938." It is further alleged that on the 3d day of November, 1939, title to these properties, the same not having been redeemed, passed to the State; and that under the provisions of Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, § 3723–1 *et seq.*), titles to the delinquent parcels have been transferred to the State land office board, and such parcels "are now in danger of being sold to the highest bidder." The particular religious organizations which owned the properties involved in these proceedings are not specifically named or designated but are alleged to be located in the "municipalities, townships, villages and cities in Oakland County." From the record it appears that relief was decreed to approximately 24 of such religious organizations against whose properties special assessments had been levied for beneficial improvements, such as sewers, pavements, et cetera. The petition further sets forth that the danger to the property rights of the respective religious organizations in their properties is being "paralleled by the 1939 tax sale and probably will be paralleled in the 1940 tax sale;" and that "the crippling of their functions by the loss of their church homes would be a public disaster." The prayer of the petition is that a copy thereof be served upon each municipality in Oakland county together with an order to show cause "why the necessary and advisable steps should not be taken to remedy the situation;" that the State land office board and the auditor general be requested to submit to the jurisdiction of the court; and that "such instructions (be) given by this court to the petitioner as the exigencies of the case require and the law permits."

It is to be noted that none of the religious organizations whose properties are involved were made parties to these proceedings, nor have they inter-

vened or in any way become parties thereto. Presumably this course was taken on the assumption that since title to the respective properties had already vested in the State the religious organizations were neither necessary nor proper parties. Answers and returns to the order to show cause were filed by the State land office board and the auditor general, and also by some of the municipalities. But of the municipalities only the answer of the city of Pontiac appears in the record.

The attorney general, in answering for the State land office board and the auditor general, concedes "that the respondent State land office board had no power to offer for sale at its 1940 public auction sale any land which was not assessed for general taxation in the year 1938;" and asserts without contradiction that the State land office board has not offered for sale "any of the many houses of public worship title to which became vested in the State of Michigan by virtue of the 1938 tax sale and nonredemption therefrom." This attitude on the part of the State land office board, and a like position taken by the city of Pontiac, is justified for the following reason. Act No. 155, § 7, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3723-7, Stat. Ann. 1941 Cum. Supp. § 7.957), provides that at sales held by the the State land office board the respective parcels are to be sold at public auction to the highest bidder, at a minimum of 25 per cent. of the assessed valuation, with certain priority redemption privileges to the owner or owners of the property sold. But by statutory provision (1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933 [Comp. Laws Supp. 1935, § 3395, Stat. Ann. § 7.7]) all houses of public worship with the land on which they stand and the furnishings therein, as well as parsonages owned by religious societies and occupied as

such, are exempt from taxation. In consequence thereof such properties are not entered upon tax rolls with any "assessed valuation." It follows that until the recent amendment of the statute hereinafter noted, the State land office board was without power to sell such properties because there was no way of determining what was the minimum sale price on the basis of "25 per cent. of the assessed valuation." It was so decreed by the trial court and to that extent the decree must be affirmed.

But the circuit judge in his decree went much further and in effect embodied provisions therein which could be sustained only upon the theory that the municipal subdivisions of the State are without power to levy and collect assessments for special improvements against church-owned properties. Accordingly it was decreed that the auditor general and the State land office board should reconvey to the respective religious organizations any church properties of which title had passed to the State of Michigan by reason of failure to redeem from the tax sale of 1938; and the State land office board was permanently enjoined from selling at any of its sales "any and all church property hereinafter described, which is exempt from assessment under the general tax laws of the State of Michigan;" and further the auditor general and the State land office board were ordered and directed to reconvey to the respective church organizations any and all their church properties which were bid in by the State at the 1939 tax sale, and the sale of such properties at the 1940 tax sale was enjoined. It is from this portion of the decree that the State land office board and auditor general, acting through the attorney general, have appealed.

In granting the relief just above noted, the trial judge seems to have been motivated by his conclusion that he was protecting constitutional rights of

the interested religious organizations. This is indicated by the following quoted from the decree:

"And it further appearing to this court that it would not only be contrary to public policy to condone or permit the sale of these church properties, but in addition thereto, that it would be contrary to the spirit of the Constitution of the State of Michigan, particularly article 11, § 1, which reads as follows:

" 'Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.' "

In this connection the circuit judge also quoted the preamble to the Constitution of the United States and concluded: "that this court has authority to cancel sales, heretofore made, and enjoin future sales, * * * (and) this court, by the authority therein vested, doth" grant the relief last above noted. We are of the opinion that in this phase of the decree the trial court exceeded its judicial powers and attempted to grant relief properly obtainable by legislation only. If due recognition is given to other constitutional provisions (see Michigan Constitution [1908], art. 2, § 3), the extent to which religious organizations may be relieved of the burdens of taxation is clearly a question for the legislature. As above noted, statutory provision has been made for the exemption of church-owned property from general taxation. But special assessments authorized by law do not fall within the exemption granted by the general property tax law. *Lefevre v. Mayor of Detroit*, 2 Mich. 587; *City of Big Rapids v. Mecosta County Supervisors*, 99 Mich. 351. There is nothing in this record which would justify setting aside such special assessments on the ground that in some instances the improvements

for which the assessments were made were not immediately adjacent to the church-owned property, but instead were located within a district fixed by the municipality as the district within which the assessment should be levied with which to pay the cost of the local improvement. There is statutory authority for the creation of such assessment districts (1 Comp. Laws 1929, § 2386 [Stat. Ann. § 5.2412], 1 Comp. Laws 1929, § 2234 [Stat. Ann. § 5.2077]). And in the instant case there has been no attempt to challenge or overcome the presumption of good faith or authority on the part of any of the municipalities in establishing such assessment districts. *Powers* v. *City of Grand Rapids,* 98 Mich. 393; *Shimmons* v. *City of Saginaw,* 104 Mich. 511.

Since the decree was entered in the circuit court, statutory provisions have been enacted which obviously are intended to alleviate the situation that gave rise to the instant suit. The statute (Act No. 155, § 7, Pub. Acts 1937) was amended so as to contain the following:

"Provided, however, that in case there was no assessment of such land for such year, the city or township assessing officer shall, within 10 days after application therefor by the board, fix an assessed valuation for such year." Act No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 3723-7, Stat. Ann. 1941 Cum. Supp. § 7.957).

And by amendment of the same act (section 8d) it was further provided:

"The State land office board or department of conservation may, upon application of any religious or charitable organization, the property of which is exempt from general taxation under the provisions of section 7 of Act No. 206 of the Public Acts of 1893, as amended, withhold from sale any such lands

owned by such religious or charitable organization at the time of vesting of title in the State of Michigan, and may reconvey the same to such organization upon payment of the amount of all such taxes and special assessments together with penalties and interest thereon for which the same were sold." Act No. 363, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 3723–8d, Stat. Ann. 1941 Cum. Supp. § 7.958[4]).

Each of the foregoing amendments was made immediately effective as of June 19, 1941. To the extent hereinbefore indicated the decree entered in the circuit court is affirmed; but in so far as the decree orders reconveyance "to the respective church bodies (of) title to any church property hereinafter described" and in so far as the decree permanently enjoins the State land office board from selling lands of the character here involved, it should be reversed. A decree may be entered in this Court in accordance herewith, but because a public question is involved no costs will be awarded.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.